## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN CONSOLIDATED INDUSTRIES, INC., *et al.*, | ) ) ) | Case No. 1:19-cv-137 |
| Plaintiffs, | ) ) | Judge J. Philip Calabrese |
| v. | ) ) | Magistrate Judge Thomas M. Parker |
| CHAD BLASINGIM, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |
| MONARCH STEEL COMPANY, INC., | ) ) | Case No. 5:17-cv-2253 |
| Plaintiff, | ) ) | Judge J. Philip Calabrese |
| v. | ) ) | Magistrate Judge Thomas M. Parker |
| JAMES EDWARD MCCRACKEN, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

## OPINION AND ORDER

What began as a relatively straightforward trade-secret dispute in connection with a former employee's decision to work for a competitor has grown into complicated and interrelated proceedings raising the prospect of discovery sanctions and contempt. Because of the time and technical expertise required to manage and oversee the parties' investigation of the facts necessary for resolution of these serious issues (*Blasingim* ECF No. 116; *McCracken* ECF No. 37), the Court appointed a Special Master (*Blasingim* ECF No. 122; *McCracken* ECF No. 43).

Based on her management of the proceedings and her review of the record and the parties' respective positions, the Special Master recommends that the Court hold Liberty Steel Products, one of the Defendants in the *McCracken* matter (Case No. 5:17-cv-2253), in civil contempt and find that Liberty Steel engaged in sanctionable discovery conduct in the *Blasingim* case (No. 1:19-cv-137). (*Blasingim* ECF No. 166, PageID #4939; *McCracken* ECF No. 75, PageID #3082.) She also recommends various remedial measures and sanctions to address the misconduct she details in her Report and Recommendation. (*Blasingim* ECF No. 166, PageID #4939–40; *McCracken* ECF No. 75, PageID #3082–83.)

After the parties filed objections and motions to adopt or modify the Special Master's Report and Recommendation, the Court held oral argument. At the argument, counsel for the parties agreed that the Court could and should resolve the issues without an evidentiary hearing. With the benefit of the parties' briefing and argument, the Special Master's Report and Recommendation, and careful consideration of the serious issues raised on the complicated record presented, the Court turns to resolution of all pending motions, objections, and other issues. In doing so, the Court limits its role to determining the facts relevant to the issues of discovery sanctions, contempt, and any remedy, mindful that a jury in the *Blasingim* case will ultimately decide the facts, including whether Plaintiffs have trade secrets.

## STANDARD OF REVIEW

Rule 53 provides that the Court "must decide de novo all objections to findings of fact made or recommended by a master." Fed. R. Civ. P. 53(f)(3). The Rule "requires *de novo* review only of objections to the findings of fact included in the

2

Master's Report"—not the entirety of the master's report and recommendation. *Quantum Sail Design Grp., LLC v. Jannie Reuvers Sails, Ltd.*, 827 F. App'x 485, 491 (6th Cir. 2020). In reviewing objections to a master's findings of facts, a court operates with "respect and a tacit presumption of correctness," but "assumes the ultimate responsibility for deciding all matters." *Id.* at 491 (cleaned up). Similarly, the Court "must decide de novo all objections to conclusions of law made or recommended by a master." Fed. R. Civ. P. 53(f)(4). With respect to procedural matters, however, the Court "may set aside a master's ruling . . . only for an abuse of discretion." Fed. R. Civ. P. 53(f)(5).

When acting on the Special Master's report and recommendation, the Court "may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1). In this respect, the ultimate decision rests with the Court and must be its own. *See Quantum Sail Design Grp.*, 827 F. App'x at 491. Against this standard of review of the Special Master's Report and Recommendation, the Court makes two notes at the outset. First, in this ruling, the Court endeavors to prepare a single document including the relevant background for the benefit of the parties, the Sixth Circuit, and any members of the public who might review these proceedings. Second, addressing the parties' objections and motions in response to the Special Master's Report and Recommendation requires handling some matters in an order that might appear not to make the most sense logically or procedurally. But the Court has done its best to keep such instances to a minimum and to make this ruling as complete and accessible as practicable.

## FINDINGS OF FACT

Based on the record before the Court, including the Special Master's Report and Recommendation, the Court makes the following findings of fact. Additionally, resolution of some legal matters the parties raise requires a detailed factual discussion best handled with those legal issues. In those instances, which the Court tries to keep to a minimum, the Court's findings of fact appear in the discussion of its conclusions. In making its findings, the Court is mindful and emphasizes that these findings are made only for purposes of resolving the particular motions and issues pending before it—unless expressly stated otherwise.

### A.      Liberty Steel, Monarch Steel, and American Consolidated

Liberty Steel processes "coated, cold rolled, and hot rolled steel and provides a variety of state-of-the-art stamping and blanking services." (*Blasingim* ECF No. 166, PageID #4940 (referencing Liberty Steel's website); *McCracken* ECF No. 75, PageID #3083 (same).) The company has its headquarters in North Jackson, Ohio. (*Id.*)

Monarch Steel Company, Inc. is a subsidiary of American Consolidated Industries. (*Id.*) Monarch Steel "is one of the country's largest providers of hot rolled, cold rolled and galvanized steel product." (*Id.* (referencing Monarch Steel's website).) Like Liberty Steel, Monarch Steel has its headquarters in Northeast Ohio, but it also has service centers in Alabama, Kentucky, and elsewhere in Ohio. (*Id.*) Liberty Steel and Monarch Steel are competitors. (*Id.*)

4

**B.**     **The First Lawsuit:** *Monarch Steel v. McCracken*

In the *McCracken* case, Monarch Steel averred that it hired James McCracken in 2012 as an account manager.  (*McCracken* ECF No. 1, ¶ 9, PageID #3.)   His responsibilities included sales and customer support for new and existing customers.  (*Id.*)  Monarch Steel alleged that Mr. McCracken left the company by September 11, 2017 and then went to work for Liberty Steel.  (*Id.*, ¶¶ 15 & 16, PageID #5.)  When he did so, Monarch Steel alleged that he pursued at least three of its customers using confidential information from Monarch Steel.  (*Id.*, ¶¶ 17 & 18.)

**B.1.**   **The Southern Strategy**

As the Special Master reports (*Blasingim* ECF No. 166, PageID #4940; *McCracken* ECF No. 75, PageID #3083), beginning in 2017, Liberty Steel sought to compete against Monarch Steel and others in the southeastern United States through the acquisition of Mississippi Steel Processing, LLC (*Blasingim* ECF No. 177, PageID #6857; *McCracken* ECF No. 78, PageID #3665).  Further, the Special Master states that Liberty Steel "expanded[ed] its sales force in that region.  James McCracken, Jon Campbell, and Chad Blasingim were employees of Monarch [Steel] who were recruited to join Liberty" Steel.  (*Blasingim* ECF No. 166, PageID #4940; *McCracken* ECF No. 75, PageID #3083.)  Primarily, Mr. McCracken worked with customers in Northeast Ohio.  (*Blasingim* ECF No. 175-1, PageID #6490–91; *McCracken* ECF No. 77-1, ¶ 6, PageID #3345–46.)  According to Liberty Steel's briefing to the Special Master, "Liberty did not hide the fact that it was specifically interested in doing business with MTD, Monarch's largest customer, as well as other potential customers

in the region." (*Blasingim* ECF No. 177, PageID #6857; *McCracken* ECF No. 78, PageID #3665.)

Although Liberty Steel's counsel references this episode as part of the company's "Southern Strategy" (*id.*), Liberty Steel objects to the Special Master's use of the term in connection with her discussion of Liberty Steel's hiring of Mr. McCracken at the beginning of her factual account of the background resulting in these proceedings. (*Blasingim* ECF No. 159, PageID #4841–42; ECF No. 68, PageID #2984–85.)  The Court **OVERRULES** this objection for two reasons.  First, whether Liberty Steel hired Mr. McCracken as part of its Southern Strategy or not, the factual discussion to which Liberty Steel objects has little to do with the issues before the Court in these proceedings.  Second, nothing about this background discussion in the Special Master's Report and Recommendation undermines her conclusions or recommendations.

### B.2.    The *McCracken* Litigation

About six weeks after Mr. McCracken left Monarch Steel, on October 24, 2017, Monarch Steel filed a complaint against Mr. McCracken, JIMMYMAC, LLC (his company), and Liberty Steel (Case No. 5:17-cv-2253).  Monarch Steel alleged that, before Mr. McCracken left the company, he emailed himself confidential and proprietary trade secret information from Monarch Steel's computer system, including "volume and pricing structure details pertaining to significant customer and vendor agreements." (*McCracken* ECF No. 1, ¶¶ 14 & 41, PageID #5 & 9.) Further, Monarch Steel alleged that Mr. McCracken "attempt[ed] to 'wipe' all traces of his illegal conduct from his computer."  (*Id.*, ¶ 14, PageID #5.)  Monarch Steel

sought damages for misappropriation of trade secrets and tortious interference with its business relationships along with injunctive relief.  (*Id.*, ¶¶ 20–45, PageID #6–10.)

In the end, Mr. McCracken worked for Liberty Steel only for "a few months." (*Blasingim* ECF No. 175-2, ¶ 3, PageID #26502; *McCracken* ECF No. 77-2, ¶ 3, PageID #3357.)  In his brief time with the company, he remained an independent contractor, did not have a physical office or desktop computer with Liberty Steel, and made only one sale.  (*Id.*)

### B.3.    Settlement and the Stipulation and Order of Dismissal

Just over a month after Monarch Steel filed suit, on November 27, 2018, the parties settled.  (*Blasingim* ECF No. 166, PageID #4941; *McCracken* ECF No. 75, PageID #3084.)  They did so before conducting any discovery.  (*Blasingim* ECF No. 175, PageID #6424; *McCracken* ECF No. 77, PageID #3279.)  The parties' settlement contained no financial consideration.  (*See Blasingim* ECF No. 175-1; *McCracken* ECF No. 77-1.)  Instead, Liberty Steel ended its relationship with Mr. McCracken and refrained from soliciting certain customers until September 11, 2018—one year after Mr. McCracken's last day of employment with Monarch Steel. (*Blasingim* ECF No. 175-1, ¶ 6, PageID #6490; *McCracken* ECF No. 77-1, ¶ 6, PageID #3345.)

### B.3.a. "Monarch's Protected Property and Information"

Further, the settlement agreement required Liberty Steel, Mr. McCracken, and his company not to retain or disclose Monarch Steel's "Protected Property and Information":

> 3.    Agreement Not to Use Monarch's Property and Information.
> McCracken, JIMMYMAC, and Liberty are prohibited from using,
> copying, retaining, or disclosing Monarch's trade secret property and
> protected information as defined by federal and Ohio law.
> Notwithstanding trade secret or protected information status,
> McCracken, JIMMYMAC, and Liberty are also prohibited from using,
> copying, retaining or disclosing any Monarch documents or information
> obtained from Monarch's databases, systems, or records whether in
> electronic or paper form that McCracken/JimmyMac LLC has secured
> from his prior employment with Monarch.  (All of this information to be
> defined as "Monarch's Protected Property and Information").

(*Blasingim* ECF No. 175-1, ¶ 3, PageID #6473; *McCracken* ECF No. 77-1, ¶ 3, PageID #3328.)  Significantly, this paragraph of the settlement agreement defines "Monarch Protected Property and Information" more broadly than "trade secret property and protected information as defined by federal and Ohio law."  (*Id.*)  In addition, the defined term includes "any Monarch documents or information obtained from Monarch's databases, systems, or records whether in electronic or paper form that Monarch/JimmyMac LLC has secured from his prior employment with Monarch."  (*Id.*)

Further, the settlement agreement obligated Liberty Steel to verify by affidavit that it had conducted a forensic search for certain data and information, returned all such information to Monarch Steel, and removed that information from its computer systems:

> 4.    Return of Monarch's Protected Property and Information.
> McCracken, JIMMYMAC, and Liberty agree to return to Monarch and
> then destroy all Monarch Protected Property and Information that is in
> their possession or under their control under the process and protocol
> identified below. . . .

8

### a.   Liberty's Obligations To Return Monarch Protected Property and Information

1.    Within ten (10) days of the effective date of this Settlement Agreement, Liberty, at Liberty's cost, shall allow a forensic examination and inventory by a forensic expert . . . of a certain cell phone, and laptop which Liberty provided to McCracken/JIMMYMAC.  The expert shall provide all counsel with an inventory of all items and information that are included on such devices. . . . Within five (5) business days of Monarch receiving an inventory, Monarch will confirm the identity of all Monarch protected property and information on the inventory and its position on assertions of privilege. . . . If there is no disagreement with the items so identified by Monarch in the inventory as its property, after five (5) business days of the parties' receipt of the inventory, all such Monarch Protected Property and Information will be returned to Monarch and purged by the forensic expert from the device(s) or account in question.  Any hardcopy of Monarch Protected Property and Information shall be provided to Monarch. . . .

2.    Within five (5) days of the effective date of this Settlement Agreement, Liberty agrees to return to Monarch all emails and communications between it and McCracken/JIMMYMAC stored on devices and in accounts other than those described in paragraph 4(a)(1), subject to the redaction of any confidential, proprietary or privileged information of Liberty/McCracken/JIMMYMAC.  Liberty/ McCracken/JIMMYMAC shall provide a privilege log identifying withheld or redacted information.  If any information contained in these emails or communications contain Monarch's Protected Property and Information, Liberty/McCracken/JIMMYMAC agrees, except as otherwise provided herein, to destroy and purge all copies of the information whether in electronic or paper form. . . .

3.    Liberty agrees to verify via the attached affidavit (Exhibit 1) that all locations and devices within their possession and control have been searched and all Monarch Protected Property and Information has been returned and none has been copied, retained, used, or disclosed to anyone else except as otherwise provided herein.

(*Blasingim* ECF No. 175-1, ¶¶ 4.a.1—4.a.3, PageID #6473–74; *McCracken* ECF No. 77-1, ¶¶ 4.a.1—4.a.3, PageID #3328–29.)

Additionally, Liberty Steel agreed to verify by affidavit that only one order related to the efforts of Mr. McCracken:

> 6. <u>Restriction on the Activities of Liberty, McCracken and JIMMYMAC.</u> Liberty, McCracken and JIMMYMAC to confirm via the attached affidavits (Exhibits l and 2) that no formal purchase orders have been made based upon the efforts of McCracken or JimmyMac LLC with Liberty or by them on behalf of any other competitor of Monarch apart from [one specific existing order].

(*Blasingim* ECF No. 175-1, ¶ 6, PageID #6477; *McCracken* ECF No. 64-1, PageID #1009.) Liberty Steel also agreed not to do business with certain customers until September 11, 2018. (*Blasingim* ECF No. 175-1, ¶ 6, PageID #6490–91; *McCracken* ECF No. 77-1, ¶ 6, PageID #3345–46.)

### B.3.b. Stipulated Dismissal

On December 12, 2017, the Court entered a stipulated dismissal with prejudice. (*McCracken* ECF No. 21.) This dismissal entry expressly directed that "Defendants are prohibited from using, copying, retaining, or disclosing Monarch's 'protected property and information' as defined in the parties' Settlement Agreement," though it permitted "Defendants and Defendants' forensic expert(s) [to] retain a copy of Monarch's 'protected property and information' for the sole purpose of this case[.]" (*Id.*, PageID #134.) In this way, the Court incorporated into its Order the defined term "Monarch's Protected Property and Information" with the meaning the parties gave it in their settlement agreement. Further, the Court expressly retained jurisdiction over the settlement agreement. (*Id.*) As a stipulation, counsel

10

for Liberty Steel, Mr. McCracken and his company, and Monarch Steel each signed the entry before the Court entered it as its Order.  (*Id.*, PageID #135.)

### B.3.c. Execution of the *McCracken* Settlement

When the parties executed the settlement agreement on November 11, 2017, Liberty Steel's then-President and Chief Executive Officer, James Grasso, also executed an affidavit attesting that the company had searched its systems, accounts, and devices and instructed its forensic expert to delete Monarch Steel's protected property and information:

> Liberty has searched all systems, accounts, and devices belonging to Liberty for any information belonging to Monarch Steel Company, Inc. . . . After return of Monarch's Protected Property and Information as defined in the parties' Settlement Agreement, Liberty further instructed a third party forensic expert to delete all Monarch Protected Property and Information (and copies).

(*Blasingim* ECF No. 154-2, ¶ 4, PageID #2567; *McCracken* ECF No. 63-2, ¶ 4, PageID #742; *see also Blasingim* ECF No. 175, PageID #6429; *McCracken* ECF No. 77, PageID #3284.)  Despite Grasso's contemporaneous attestation that at least some of the required remediation had been completed, the settlement agreement was largely executory, and the parties spent nearly a year and a half implementing its terms. (*Blasingim* ECF No. 175-2, ¶ 6, PageID #6505; *McCracken* ECF No. 77-2, ¶ 6, PageID #3360.)

### C.    Settlement Implementation and More Employee Departures

Chad Blasingim and Jon Campbell worked for Monarch Steel until 2018. (*Blasingim* ECF No. 26, ¶¶ 31 & 43, PageID #144 & #146.)  Mr. Campbell worked as Vice President of Commercial for American Consolidated Industries, Inc., the parent

company of Monarch Steel, and Mr. Blasingim worked as an outside sales representative.  (*Id.*, ¶¶ 17 & 22, PageID #141–42.)  Neither had covenants not to compete or non-solicitation agreements.  (*Blasingim*, ECF No. 177, PageID #6858; *McCracken* ECF No. 78, PageID #3666.)

Following the *McCracken* settlement, American Consolidated required its employees to sign non-disclosure and non-solicitation agreements beginning on January 2, 2018.  (*Blasingim* ECF No. 26, ¶ 30, PageID #144.)  Mr. Blasingim and Mr. Campbell declined to sign these agreements.  (*Id.*)  American Consolidated fired Mr. Campbell on February 6, 2018.  (*Id.*, ¶ 31; *Blasingim* ECF No. 166, PageID #4941; *McCracken* ECF No. 75, PageID #3084.)

Liberty Steel hired Mr. Campbell in February 2018 and began communicating with Mr. Blasingim in March 2018 about possible employment.  (*Blasingim* ECF No. 166, PageID #4946; *McCracken* ECF No. 75, PageID #3089.)  At this time, Monarch Steel was unaware of Mr. Campbell's employment with Liberty Steel.  (*Id.* at n.3.)  Liberty Steel takes issue with the Special Master's report of this fact.  (*Blasingim* ECF No. 197, PageID #9961–62; *McCracken* ECF No. 80, PageID #3814–15.)  Notwithstanding Liberty Steel's objection, its bullet-point listing fails to refute the basic point.  Instead, Liberty Steel recounts facts learned in discovery, none of which shows that Monarch Steel was aware that Liberty Steel was in contact with Mr. Campbell while he was employed with American Consolidated.  (*Id.*)  Accordingly, the Court **OVERRULES** this objection.

12

The record from the Special Master proceedings shows that, while they were being recruited to join Liberty Steel, both Mr. Campbell and Mr. Blasingim emailed and texted information about Monarch Steel's business and from Monarch Steel's systems to themselves, each other, and to Liberty Steel.  (*Blasingim* ECF No. 166, PageID #4946–47; *McCracken* ECF No. 75, PageID #3089–90.)  It also contains evidence that Mr. Blasingim communicated with Mr. Campbell as early as March 2018 about leaving Monarch Steel to join Liberty Steel.  (*Id.*)  Liberty Steel appears to concede these facts.  (*Blasingim* ECF No. 197, PageID #9961–62; *McCracken* ECF No. 80, PageID #3814–15.)

### C.1.    Implementation of the *McCracken* Settlement

When American Consolidated terminated Mr. Campbell, Monarch Steel and Liberty Steel were working to implement the *McCracken* settlement agreement. (*Blasingim* ECF No. 166, PageID #4946; *McCracken* ECF No. 75, PageID #3089.)

### C.1.a. What Liberty Steel Said It Did

On May 23, 2018, Liberty Steel's Chief Financial Officer, Jason Mericle, executed an affidavit "for purposes of implementing" the settlement agreement. (*Blasingim* ECF No. 175-1, ¶ 7, PageID #6491; *McCracken* ECF No. 77-1, ¶ 7, PageID #3346.)  In his affidavit, Mericle attested that "all e-mails to or from James E. McCracken have been securely deleted" by way of deleting McCracken's "entire e-mail account with Liberty," "there are no paper or electronic copies or images of the items deleted," "Liberty has not used or disclosed any of the items or information which were the property of Monarch," and "Liberty has no such information from other sources."  (*Blasingim* ECF No. 175-1, ¶¶ 3, 4 & 5, PageID #6490; *McCracken*

13

ECF No. 77-1, ¶¶ 3, 4 & 5, PageID #3345.)  During proceedings before the Special Master, Liberty Steel produced an affidavit and documents confirming Mericle's statements in 2018 that Liberty Steel deleted Mr. McCracken's email account as part of the settlement agreement.  (*Blasingim* ECF No. 175-2, ¶ 5, PageID #6503–04; *McCracken* ECF No. 77-2, ¶ 5, PageID #3358–59; *see also Blasingim* ECF No. 166-1, PageID #4969; *McCracken* ECF No. 75-1, PageID #3112.)

### C.1.b. What the Record Shows Liberty Steel Actually Did

However, the same affidavits demonstrate that Grasso's affidavit executed on November 11, 2017 was false.  Grasso attested that "Liberty further instructed a third-party forensic expert to delete all Monarch Protected Property and Information (and copies)."  (*Blasingim* ECF No. 154-2, ¶ 4, PageID #2567; *McCracken* ECF No. 63-2, ¶ 4, PageID #742.)  But Mericle's affidavit in the Special Master proceedings shows that Liberty Steel did *not* engage a third-party forensic expert to delete Monarch Steel's protected property and information from its systems.

To the contrary, Mericle attested that "Liberty did not view a forensic search of its servers to be a necessary or appropriate expense."  (*Blasingim* ECF No. 175-2, ¶ 4, PageID #6502; *McCracken* ECF No. 77-2, ¶ 4, PageID #3357; *see also Blasingim* ECF No. 175-2, ¶ 5(c), PageID #6504; *McCracken* ECF No. 77-2, ¶ 5(c), PageID #3359.)  The only third-party forensic expert engaged to carry out the terms of the settlement agreement was Brett Kimmell, a security consultant who was retained exclusively to "examine certain devices [belonging to Mr. McCracken] . . . and to review a certain email account for the purposes of identifying and gathering emails that may have contained Monarch's protected property and information."

14

(*Blasingim* ECF No. 175-1, ¶ 2, PageID #6493; *McCracken* ECF No. 77-4, ¶ 2, PageID #3348; *see also Blasingim* ECF No. 175-2, ¶ 6, PageID #6505; *McCracken* ECF No. 77-2, ¶ 6, PageID #3360.)

Instead of using a third-party forensic expert, as Grasso swore the company did, Liberty Steel chose to handle remediation of its systems in house.  According to Mericle, Liberty Steel believed "that the primary means by which James McCracken likely could or would have transmitted any information . . . would have been through e-mail." (*Blasingim* ECF No. 175-2, ¶¶ 4 & 5(c), PageID #6502 & #6504; *McCracken* ECF No. 77-2, ¶¶ 4 & 5(c), PageID #3357 & #3359.)  Accordingly, "Liberty did not view a forensic search of its servers to be a necessary or appropriate expense." (*Blasingim* ECF No. 175-2, ¶ 4, PageID #6502; *McCracken* ECF No. 77-2, ¶ 4, PageID #3357.)  Liberty Steel's leadership team managed the remediation, primarily by instructing (i) its director of strategic projects and sole IT employee to perform a search and verify that all "emails to or from McCracken" were deleted; and (ii) its vice president of service center sales to "look for any files and documents containing Monarch Protected Property and Information and delete them." (*Blasingim* ECF No. 175-2, ¶¶ 5(b) & 5(c), PageID #6504; *McCracken* ECF No. 77-2, ¶¶ 5(b) & 5(c), PageID #3359; *Blasingim* ECF No. 175-2, PageID #6519–23; *McCracken* ECF No. 77-2, PageID #3374–78.)

Although Mericle identifies "the only Liberty IT employee at the time" as having verified the deletion of emails to or from Mr. McCracken, Liberty Steel fired this employee in April 2019 because "she lacked the necessary skillset and experience

to handle Liberty's IT needs." (*Blasingim* ECF No. 175-2, ¶¶ 5(b), PageID #6504; *McCracken* ECF No. 77-2, ¶¶ 5(b), PageID #3359; *see also Blasingim* ECF No. 175, PageID #6428; *McCracken* ECF No. 77, PageID #3283.)   Then, Liberty Steel outsourced this function to a third-party company called ARCIS, which acted as its IT department. (*Blasingim* ECF No. 175-2, ¶¶ 5(b), PageID #6504; *McCracken* ECF No. 77-2, ¶¶ 5(b), PageID #3359.)

Liberty Steel admits that its in-house approach was unsuccessful in remediating all Monarch Protected Property and Information from its systems, a fact that came to light during discovery in the *Blasingim* litigation, as discussed further below. (*Blasingim* ECF No. 166, PageID #4945; *McCracken* ECF No. 75, PageID #3088.)

### C.2.   Mr. Blasingim's Departure from Monarch Steel

On August 17, 2018, Mr. Blasingim left Monarch Steel for Liberty Steel. (*Blasingim*, ECF No. 26, ¶ 43, PageID #146.)  A few days after he did, Monarch Steel learned that Mr. Campbell was working with Liberty Steel. (*Blasingim* ECF No. 166, PageID #4946; *McCracken* ECF No. 75, PageID #3089; *Blasingim* ECF No. 174, PageID #6274 & n.2; *McCracken* ECF No. 76, PageID #3129 & n.2.)  Shortly after Mr. Blasingim left Monarch Steel, the company's counsel sent him a cease-and-desist letter. (*Blasingim*, ECF No. 26, ¶ 52, PageID #148.)

### D.   The Second Lawsuit: *American Consolidated v. Blasingim*

On January 17, 2019, American Consolidated and Monarch Steel filed separate complaints against Mr. Blasingim in Case No. 19-cv-137 (N.D. Ohio) and against Mr. Campbell in Case No. 19-cv-138 (N.D. Ohio).  In March 2019, Mr. Blasingim and

16

Mr. Campbell answered the complaints against them through their common counsel at Dentons.  (*Blasingim* ECF No. 166, PageID #4947; *McCracken* ECF No. 75, PageID #3090.)

### D.1.   Responses to Plaintiffs' Initial Discovery Requests

Dentons, which later withdrew when Gallagher Sharp appeared, responded to substantially similar written discovery requests Plaintiffs propounded to Mr. Blasingim and Mr. Campbell.  (*Blasingim* ECF No. 154-14; *Blasingim* ECF No. 154-15; *McCracken* ECF No. 63-14; *McCracken* ECF No. 63-15.)  Among other things, Plaintiffs' discovery requests sought written communications between each Defendant and any representative or employee of Liberty Steel after January 1, 2018; documents (including, specifically, text messages) reflecting the circumstances under which Liberty Steel hired each Defendant; and all documents and data that either Defendant "accessed, copied, emailed to yourself, or removed from" Monarch Steel before specified dates.   Subject to certain objections and limitations, both Mr. Blasingim and Mr. Campbell committed to producing responsive documents.  (*Id.*; *see also Blasingim* ECF No. 166, PageID #4948; *McCracken* ECF No. 75, PageID #3091.)

Significantly, Dentons imaged and preserved the cell phones of both Mr. Blasingim and Mr. Campbell early in the litigation.  (*Blasingim* ECF No. 166, PageID #4948; *Blasingim* ECF No. 156-22, ¶ 8, PageID #3577; *McCracken* ECF No. 75, PageID #3091; *McCracken* ECF No. 65-22, ¶ 8, PageID #1720.)  However, "Dentons did not produce that information to Plaintiffs."  (*Blasingim* ECF No. 166, PageID #4948; *McCracken* ECF No. 75, PageID #3091.)

17

### D.2.  Amendment and Transition of Counsel

On May 13, 2019, Plaintiffs amended to add Liberty Steel as a Defendant in both cases.  (*Blasingim* ECF No. 166, PageID #4947; *McCracken* ECF No. 75, PageID #3040.)  Generally, Plaintiffs allege that all Defendants misappropriated confidential, proprietary, and trade secret information in violation of State and federal law, tortiously interfered with Monarch Steel's customer relationships, converted Monarch Steel's property, were unjustly enriched, and engaged in a conspiracy to steal Monarch Steel's business.  (*See generally Blasingim* ECF No. 26.)  At the latest, by this point in time, Liberty Steel had an obligation in the new litigation to preserve documents and information.  To the extent it had a question about doing so while subject to the Court's Order in *McCracken*, Liberty Steel could have and should have conferred with opposing counsel, then involved the Court if necessary.

In June 2019, the two new cases were formally consolidated under the *Blasingim* case number.  (*Blasingim* ECF No. 166, PageID #4947; *McCracken* ECF No. 75, PageID #3040.)  All three Defendants answered the amended complaint through new counsel at Gallagher Sharp LLP.  (*Blasingim* ECF No. 35; *Blasingim* ECF No. 36; *Blasingim* ECF No. 37.)  Contemporaneously, Dentons sought and received leave to withdraw.  (*Blasingim* ECF No. 38.)  Notably, "for reasons that remain unclear[, Dentons] did not transfer that information [Mr. Blasingim's and Mr. Campbell's imaged cell phones] to Gallagher Sharp when the matter was transitioned."  (*Blasingim* ECF No. 166, PageID #4948; *Blasingim* ECF No. 156-22,

¶ 8, PageID #3577; *McCracken* ECF No. 75, PageID #3091; *McCracken* ECF No. 65-22, ¶ 8, PageID #1720.)

### D.3.  Significant Events in Discovery

As the consolidated case proceeded, the Special Master finds that "diplomatically put, discovery did not go smoothly." (*Blasingim* ECF No. 166, PageID #4948 (cleaned up and citation omitted); *McCracken* ECF No. 75, PageID #3091 (same).)  As Liberty Steel observes, Plaintiffs were "relentless and aggressive in pursuing discovery." (*Blasingim* ECF No. 166, PageID #4948; *McCracken* ECF No. 75, PageID #3091; *see also Blasingim* ECF No. 156-22, ¶ 4, PageID #3577; *McCracken* ECF No. 65-22, ¶ 4, PageID #1720.)  Even so, "the discovery sought in this case was extensive, although not outside the bounds of the Federal Rules and not entirely surprising given the scope of the allegations, number of defendants, the parties' history, and the general morass that is modern electronic discovery." (*Blasingim* ECF No. 166, PageID #4948; *McCracken* ECF No. 75, PageID #3091.)  Further, the record shows that discovery was "extraordinarily contentious." (*Id.*)

### D.3.a. Initial ESI Discovery

In her Report and Recommendation, the Special Master found the following events in discovery, in addition to the early matters already discussed above, significant to one degree or another, though by no means exhaustive (*see generally Blasingim* ECF No. 166, PageID #4949–52; *McCracken* ECF No. 75, PageID #3092–95):

19

- On August 22, 2019, responding to deficiencies that Plaintiffs claimed, Gallagher Sharp confirmed on behalf of Mr. Blasingim and Mr. Campbell that all of their "personal and Liberty Steel-issued email addresses and devices have been preserved." (*Blasingim* ECF No. 154-17, PageID #2713; *McCracken* ECF No. 63-17, PageID #888.) Gallagher Sharp also stated that neither individual Defendant had any documents or data in his possession relating to Plaintiffs or its "products, customers, suppliers, wholesalers, business contacts, plans, strategies, employees, pricing, or support services." (*Blasingim* ECF No. 154-17, PageID #2717; *McCracken* ECF No. 63-17, PageID #892.)

- On September 12, 2019, through Gallagher Sharp, Liberty Steel responded to Plaintiffs' first discovery requests.  Among other things, Liberty Steel indicated that it did not have any documents responsive to Plaintiffs' request for "documents and data that are in your possession or under your control and that relate to American Consolidated Industries Inc. or any of its subsidiaries," including Monarch Steel, or "Monarch's operations, products, customers, suppliers, wholesalers, business contacts, plans, strategies, employees, pricing, or support services." (*Blasingim* ECF No. 174-2, PageID #6343; *McCracken* ECF No. 76-2, PageID #3198.)

- In November 2019, the parties agreed to a protocol for discovery of electronically stored information that required searches of various

data and devices, including specifically the cell phones of Grasso, Mr. Blasingim, and Mr. Campbell. (*Blasingim* ECF No. 174-4, PageID #6359 & PageID #6363–64; *McCracken* ECF No. 76-4, PageID #3214 & PageID #3218–19.) In an appendix to the protocol, the parties identified the custodians and search terms for the ESI search. (*Blasingim* ECF No. 174-4, PageID #6375–77; *McCracken* ECF No. 76-4, PageID #3230–32.)

In approximately May 2020, Mr. Blasingim retained separate counsel. (*Blasingim* ECF No. 54.) However, the record shows that Liberty Steel and its counsel coordinated and handled the discovery at issue unless otherwise noted. (*Blasingim* ECF No. 166, PageID #4950 n.5; *McCracken* ECF No. 75, PageID #3093 n.5; *see also Blasingim* ECF No. 156-22, ¶ 10, PageID #3578; *Blasingim* ECF No. 137, PageID #2208; *McCracken* ECF No. 65-22, ¶ 10, PageID #1721.) Then, the parties retained a third-party e-discovery vendor, Epiq, to assist in the collection, search, and production of electronically stored information. While both sides used Epiq, the collections were handled separately and each side had a separate Epiq team. (*Blasingim* ECF No. 166, PageID #4950–51; *McCracken* ECF No. 75, PageID #3093–94; *see also Blasingim* ECF No. 174, PageID #6303 n.13; *McCracken* ECF No. 76, PageID #3158 n.13.)

### D.3.b. Depositions of Mr. Blasingim and Mr. Campbell

In November 2020, Plaintiffs took the depositions of Mr. Blasingim and Mr. Campbell and confirmed that their individual cell phones had been imaged but not produced. This development necessitated an additional search. (*Blasingim* ECF

No. 154-18, PageID #2723; *Blasingim* ECF No. 154-19, PageID #2727; *McCracken* ECF No. 63-18, PageID #898; *McCracken* ECF No. 63-19, PageID #902.) Liberty Steel's counsel at Gallagher Sharp confirmed that this oversight resulted from the transition of counsel when Dentons withdrew. (*Blasingim* ECF No. 154-19, PageID #2727; *McCracken* ECF No. 63-19, PageID #902; *see also Blasingim* ECF No. 156-22, ¶ 8, PageID #3577–78; *McCracken* ECF No. 65-22, ¶ 8, PageID #1720–21.)

Liberty Steel objects to the Special Master's characterization of Plaintiffs as "learning" at the depositions that the cell phones of Mr. Blasingim and Mr. Campbell had been imaged but not produced. (*Blasingim* ECF No. 197, PageID #9964–65; *McCracken* ECF No. 80, PageID #3817–18.) It maintains that Plaintiffs proceeded with the depositions knowing that text messages had not been produced. (*Id.*) While the transcript of Mr. Blasingim's deposition confirms that Plaintiffs knew that his cell phone data had not been produced (*Blasingim* ECF No. 156-14, PageID #3467–68; *McCracken* ECF No. 65-14, PageID #1609–10), the transcript from Mr. Campbell's deposition reflects only that counsel engaged in prior discussions regarding production of an electronic spreadsheet (*Blasingim* ECF No. 156-6, PageID #3421–22; *McCracken* ECF No. 65-6, PageID #1564–65). Further, it shows that Plaintiffs held open the deposition pending a forensic review of Mr. Campbell's computer, cell phone, and text messages. (*Blasingim* ECF No. 156-6, PageID #3429; *McCracken* ECF No. 65-6, PageID #1572.) The Court finds that these transcripts reflect the common practice of using depositions to identify follow-up discovery requests—not the sort of

formal meet-and-confer effort Liberty Steel makes it out to be or bad-faith or strategic conduct on the part of Plaintiffs.  (*Blasingim* ECF No. 197, PageID #9965; *McCracken* ECF No. 80, PageID #3818.)  For purposes of its analysis and conclusions of law, the Court will treat it accordingly.  Therefore, the Court **OVERRULES** this objection of Liberty Steel.

### D.3.c. Supplemental ESI Protocol and Grasso's Deposition

At this point, at the request of the parties, the Court extended the deadline for fact discovery to March 8, 2021.  (*Blasingim* Minutes, Dec. 4, 2020.)  Accordingly, discovery continued on that schedule, with the following significant events:

- In December 2020, the parties agreed on a supplemental protocol for the search of the cell phones of Mr. Blasingim and Mr. Campbell. (*Blasingim* ECF No. 174-5; *McCracken* ECF No. 76-5.)  This supplemental protocol included a modified list of search terms that added additional terms to apply.  (*Blasingim* ECF No. 174-5, PageID #6385–87; *McCracken* ECF No. 76-5, PageID #3240–42.)

- Liberty Steel's counsel forwarded this supplemental protocol to Epiq but overlooked the appended list of modified search terms. (*Blasingim* ECF No. 156-22, ¶ 10, PageID 3578; *McCracken* ECF No. 65-22, ¶ 10, PageID #1721.)  As a result, when Epiq conducted a new search, it used the same search terms from the original 2019 protocol— a fact that only came to light during the Special Master proceedings. (*Id.*; *Blasingim* ECF No. 166, PageID #4950; *McCracken* ECF No. 75, PageID #3093.)

23

- On December 3, 2020, Plaintiffs took Grasso's deposition.  He testified about whether his cell phone had been imaged, but Liberty Steel's counsel "represented then and repeatedly thereafter that no such data was available."  (*Blasingim* ECF No. 166, PageID #4950; *McCracken* ECF No. 75, PageID #3093.)  Plaintiffs' counsel details their multiple efforts to obtain this discovery.  (*Blasingim* ECF No. 174, PageID #6312–13; *McCracken* ECF No. 76, PageID #3167–68.)  As discussed later, the Special Master proceedings revealed the reasons for this point of contention.

With respect to Grasso's testimony, Liberty Steel objects to the Special Master's recitation that "Grasso testified that his cellphone had been imaged." (*Blasingim* ECF No. 166, PageID #4950; *McCracken* ECF No. 75, PageID #3093; *see also Blasingim* ECF No. 197, PageID #9958; *McCracken* ECF No. 80, PageID #3811.) As Liberty Steel points out, Grasso initially testified that he "believe[d]" that Gallagher Sharp imaged his cell phone "during these proceedings sometime," but he did not recall specifics.  (*Blasingim* ECF No. 156-2, PageID #3286–87; *McCracken* ECF No. 65-2, PageID #1429–30.)  Later, Grasso testified that he was "not sure if it [his phone] was copied or not."  (*Blasingim* ECF No. 156-2, PageID #3308; *McCracken* ECF No. 65-2, PageID #1451.)  In that regard, his testimony extended to imaging in connection with other litigation (discussed further below) and left the record in *Blasingim* as showing that his phone was not imaged in other litigation.  (*Blasingim* ECF No. 156-2, PageID #3304; *McCracken* ECF No. 65-2, PageID #1447.)  Grasso also

24

testified that a third-party forensics company removed the *McCracken* information from Liberty Steel's servers.  (*Blasingim* ECF No. 195, PageID #9499; *see also id.*, PageID #9511.)  Based on Grasso's testimony, the Court **SUSTAINS** Liberty Steel's objection to these facts as summarized in the Report and Recommendation and proceeds in its analysis on the basis of the facts as stated here.

On December 9, 2020, the *Blasingim* case was reassigned pursuant to General Order 2020-27.  (*See Blasingim* Order, Dec. 9, 2020.)  Then, the Court referred the discovery disputes to the Magistrate Judge.  (*Blasingim* ECF No. 63.)  Before the Magistrate Judge, the following significant events occurred:

- On December 28, 2020, Plaintiffs moved to compel production of certain pricing workups that Liberty Steel objected to producing on the basis that they were not relevant.  (*Blasingim* ECF No. 64; *Blasingim* ECF No. 65-1, PageID #419–20; *Blasingim* ECF No. 69, PageID #618.)  The Magistrate Judge granted the motion.  (*Blasingim* ECF No. 85, PageID #1671–72.)

As the parties continued to spar over discovery, the Court extended the discovery cut-off to May 7, 2021.  (*Blasingim* Minute Order, Mar. 3, 2021.)  Later, the Court extended that deadline to May 10, 2021.  (*Blasingim* Minute Order, Apr. 14, 2021.)  The Magistrate Judge continued to handle various issues and disputes, and the Special Master summarizes this time as discovery proceeded as follows:

- Liberty Steel "continued to resist production."  (*Blasingim* ECF No. 166, PageID #4951; *McCracken* ECF No. 75, PageID #3094.)  After

25

clarification from the Magistrate Judge of his order granting the motion to compel (*see Blasingim* Order, Mar. 16, 2021), in April 2021 Liberty Steel produced 659 copies of the workups at issue (*Blasingim* ECF No. 154-27, PageID #2764; *McCracken* ECF No. 63-27, PageID #939.)

After the Magistrate Judge clarified his Order, the undersigned directly supervised the conclusion of discovery in *Blasingim*. (*See Blasingim* Order, Feb. 26, 2021; *Blasingim* Minute Order, Apr. 14, 2021; *Blasingim* Minutes, May 4, 2021; *Blasingim* Minute Order, May 11, 2021.)  The Special Master summarizes this time as follows:

- Throughout the first half of 2021, from February 16 through May 10, 2021, Mr. Blasingim and Mr. Campbell produced documents and information identified through application of the supplemental protocol the parties agreed to in December 2020 for searching their cell phones. (*Blasingim* ECF No. 166, PageID #4951; *McCracken* ECF No. 75, PageID #3094; *see also Blasingim* ECF No. 174, PageID #6304; *McCracken* ECF No. 76, PageID #3159.)

Throughout this time, Liberty Steel continued to represent to Plaintiffs and the Court it had no data from Grasso's cell phone.  The Court did not further extend the May 10, 2021 deadline for fact discovery. (*Blasingim* ECF No. 166, PageID #4952; *McCracken* ECF No. 75, PageID #3095.)

### E.    Motion for Contempt

On May 5, 2021, five days before the extended discovery cut-off, Plaintiffs took the deposition of Liberty Steel's Chief Financial Officer, Jason Mericle.  He testified

that he recently "found out that there was some items that had been missed" when Liberty Steel had its "IT people search and delete anything associated with Jim McCracken." (*Blasingim* ECF No. 166-2, PageID #4971; *McCracken* ECF No. 75-2, PageID #3114; *see also Blasingim* ECF No. 175-2, ¶ 7, PageID #6505–08; *McCracken* ECF No. 77-2, ¶ 7, PageID #3360–63.)  In an affidavit prepared in connection with the Special Master proceedings, Mericle explained that he learned in preparing for his deposition in *Blasingim* that Monarch Steel was "claiming that Liberty's document production in *Blasingim* contained documents that it alleged violated the" *McCracken* settlement agreement.  (*Blasingim* ECF No. 154-7, ¶ 3, PageID #2607; *McCracken* ECF No. 63-7, ¶ 3, PageID #781.)

### E.1.   Liberty Steel Uses *McCracken* to Resist Discovery

"Over the course of several weeks, Plaintiffs repeatedly requested production of those documents." (*Blasingim* ECF No. 166, PageID #4951; *McCracken* ECF No. 75, PageID #3094.)  Liberty Steel consistently responded that the *McCracken* settlement agreement required raising any dispute in that case, not in connection with discovery in *Blasingim*.  (*Id.*; *see also Blasingim* ECF No. 166-3; *McCracken* ECF No. 75-3.)  In fact, Liberty Steel took the position that, "under the clear language of the *McCracken* release, Judge Lioi retains exclusive jurisdiction" to address the production of the documents relating to Mr. Blasingim that Mericle testified remained on Liberty Steel's system.  (*Blasingim* ECF No. 166-3, PageID #4975; *McCracken* ECF No. 75-3, PageID #3118.)

Met with Liberty Steel's use of the *McCracken* settlement to frustrate discovery of information that Plaintiffs contended Defendants continued to use unlawfully,

Plaintiffs moved for contempt against Liberty Steel.  (*Blasingim*, ECF No. 109; *McCracken* ECF No. 23.)  They filed the motion in both *Blasingim* and *McCracken* and requested consolidation of the two matters before the same Judge, given the limited role of the Court in *McCracken* and its greater involvement in *Blasingim*. (*Id.*)

### E.2.    Consolidation of *Blasingim* and *McCracken*

To address the procedural matter of how to resolve Plaintiffs' motion, the two Judges presiding over the separate cases conducted a joint hearing.  The Special Master found significant one particular exchange from that hearing.  (*Blasingim* ECF No. 166, PageID #4951–52; *McCracken* ECF No. 75, PageID #3094–95.)  Specifically, counsel for Liberty Steel addressed a question about the relevance of documents from *McCracken* in *Blasingim* by responding that "they're apples and oranges.  We don't see how McCracken comes into this case."  (*Blasingim* ECF No. 135, PageID #2199; *McCracken* ECF No. 55, PageID #562.)  The Judge in *McCracken* expressed her view that the answer was "unbelievable" and challenged the position that a "document is not relevant because it's apples and oranges . . . it could be proprietary information, it could be confidential information, it could be trade secret, but because it wasn't— didn't come into the possession of the—your client in the way the plaintiff thought it did, then it's not relevant, it's just apples and oranges?"  (*Blasingim* ECF No. 135, PageID #2199–3100; *McCracken* ECF No. 55, PageID #562–63.)  Also, the Special Master later noted a question from the Judge in *McCracken* about why Liberty Steel, "in [its] search for materials that will comply with the discovery requests," "did not find these documents and why they were not discovered until May of 2021."

(*Blasingim* ECF No. 135, PageID #2172; *McCracken* ECF No. 55, PageID #535; *Blasingim* ECF No. 166, PageID #4961–62 n.10; *McCracken* ECF No. 75, PageID #3104–05 n.10.)

On July 30, 2021, the Chief Judge approved the re-assignment of *McCracken* (*McCracken* ECF No. 29), which then proceeded on a single case-management track with *Blasingim* (*Blasingim* ECF No. 110; *McCracken* ECF No. 30.)

### F.    Special Master Proceedings

Pursuant to Rule 53, the Court appointed a Special Master to manage proceedings following Plaintiffs' motion for contempt and consolidation of the cases. (*Blasingim* ECF No. 122; *McCracken* ECF No. 43.)  At bottom, the Court tasked the Special Master with overseeing proceedings necessary for resolution of the motion and preparing a report and recommendation addressing (1) an appropriate disposition for the motion for contempt in *McCracken*; (2) the propriety of discovery sanctions in *Blasingim*; and (3) the potential for reallocation of the costs for the Special Master proceedings, which were split equally between Plaintiffs and Liberty Steel.   (*Blasingim*, ECF No. 122, PageID #2066; *McCracken* ECF No. 43, PageID #431.)

In her Report and Recommendation, the Special Master details her management of the proceedings.  (*Blasingim* ECF No. 166, PageID #4953–57; *McCracken* ECF No. 75, PageID #3096–100.)  Three points merit discussion.

### F.1.    Discovery and Investigation

At the direction of the Special Master, the parties selected and engaged a vendor to perform a forensic search of Liberty Steel's system using agreed search

terms and other parameters.  (*Blasingim* ECF No. 166, PageID #4953; *McCracken* ECF No. 75, PageID #3096.)  This exercise aimed at addressing the threshold issue of what materials, if any, remain on Liberty Steel's systems that are even arguably subject to the settlement agreement in *McCracken*.  (*Blasingim* ECF No. 166, PageID #4954; *McCracken* ECF No. 75, PageID #3097.)  As with the costs for the Special Master herself, Plaintiffs and Liberty Steel bore these costs equally subject to potential reallocation.  (*Id.*)  To perform this task, the parties engaged KLDiscovery Ontrack, LLC.  (*Id.*)  KLD represented that it had no conflicts, and the parties began negotiating a protocol to govern KLD's work.  (*Id.*)

### F.1.a. Discovery of Grasso's Phone Data (*Sanko*)

Within a few weeks, Liberty Steel's counsel notified the Special Master of two developments.  First, counsel for Liberty Steel in *McCracken* confirmed that Grasso's cell phone was imaged in November 2019, an issue raised earlier at Grasso's deposition in *Blasingim* on December 3, 2020.  (*Id.*)  That imaging occurred in unrelated litigation in a case called *Sanko*.  (*Id.*; *Blasingim* ECF No. 197, PageID #9954; *McCracken* ECF No. 80, PageID #3807.)  Specifically, Liberty Steel's counsel reported the following:

> It has come to our attention that the phone of the former President of Liberty, James Grasso, was imaged in November 2019 through the course of separate, unrelated litigation.  It is my understanding that none of Liberty's current counsel on this message knew that his phone had been previously imaged and is potentially available if needed.  Because this imaging was done through different counsel and in a different litigation, some time and effort would likely be required to obtain the image.

(*Id.*)

Second, in the course of investigating the imaging of Grasso's cell phone, KLD discovered that it had done work for Liberty Steel in the case in which Grasso's phone was imaged and for Denton's in *Blasingim*. (*Id.*) Counsel reported:

> Further, in the course of investigating this, we learned that, despite KL Discovery doing a conflict check, KL Discovery actually has done work for Liberty by and through other counsel in the separate litigation and has done work through prior counsel in the *Blasingim* litigation. To be clear, the work performed by KL Discovery as part of the *Blasingim* litigation occurred prior to any attorney at Gallagher Sharp taking over representation in that matter. The entire extent of KL Discovery's involvement is not known to me or any of Liberty's current counsel in the *McCracken* or *Blasingim* cases. Because we had previously represented to you that to our knowledge KL Discovery had no prior relationship with Liberty, we feel compelled to address this issue for prompt consideration and resolution, if any is needed.

(*Id.*; *Blasingim* ECF No. 154-29, PageID #2770; *McCracken* ECF No. 63-29, PageID #945.)

As the Special Master reports, in characteristic understatement, "[t]his new information—in particular, the revelation that Grasso's phone data had been located after months of contentious back-and-forth about the same subject—delayed negotiation of the ESI Protocol and necessitated additional work by all involved parties." (*Blasingim*, ECF No. 166, PageID #4955–56; *McCracken* ECF No. 75, PageID #3098–99.) Counsel for Liberty Steel at Gallagher Sharp provided an affidavit attesting that she did not know during her representation of Liberty Steel in *Blasingim* that Grasso's "phone had been imaged in connection with other litigation or by any other attorney." (*Blasingim* ECF No. 156-22, ¶ 12, PageID #3578; *McCracken* ECF No. 65-22, ¶ 12, PageID #1721.)

### F.1.b. Preliminary Assessment

With the approval of the Special Master, the parties proceeded with KLD. (*Blasingim*, ECF No. 166, PageID #4955; *McCracken* ECF No. 75, PageID #3098.) They finalized a protocol for searching the electronically stored information at issue, and collection, processing, review, and production of the documents and data at issue took a considerable amount of time over several weeks.  (*Id.*)  As the parties agreed, Plaintiffs provided a preliminary report "outlining their findings from KLD's forensic search of Liberty's systems and the specific documents that Plaintiffs had identified to support their request for contempt and discovery sanctions."  (*Id.*)  In Plaintiffs' view, Mr. Blasingim and Mr. Campbell violated their discovery obligations, in addition to Liberty Steel.  (*Id.*)  Plaintiffs expressed their intent to seek discovery sanctions against all three.  (*Id.*)

### F.2.    Clarification of the Appointing Order

Because Mr. Blasingim has separate counsel who "had not actively participated to that point in the Special Master process," this development necessitated clarification of the scope of the Special Master's charge.  (*Id.*)  The Court invited briefing from the parties.  (*Blasingim* ECF No. 133; *McCracken* ECF No. 53.) In this briefing, counsel for Mr. Blasingim identified for the first time the problem with Epiq's second search pursuant to the supplemental protocol for electronically stored information for the cell phones of Mr. Blasingim and Mr. Campbell.  (*Id.*) Based on the review of the search term reports that Mr. Blasingim's counsel performed, "it appears that when Epiq ran the searches it used the same word searches that the parties previously provided to Epiq to run on different devices many

32

months earlier, and did not search for additional terms desired by Monarch." (*Blasingim* ECF No. 137, PageID #2208 n.4; *see also Blasingim*, ECF No. 166, PageID #4955–56; *McCracken* ECF No. 75, PageID #3098–99.)

In response to the Special Master's request for clarification, and with the benefit of the parties' briefing, the Court declined to modify the order appointing the Special Master. (*Blasingim* ECF No. 145; *McCracken* ECF No. 57.) In so ruling, the Court reaffirmed that the Special Master's charge extended to considering "whether discovery sanctions in *Blasingim* are appropriate." (*Blasingim* ECF No. 145, PageID #2388; *McCracken* ECF No. 57, PageID #569.) Further, the Court advised that "disposition of the motion for contempt in *McCracken* might have collateral effects in *Blasingim*." (*Id.*) The Court declined to amend or modify the Appointing Order specifically to bring Mr. Blasingim within its express scope, but confirmed that the Special Master's work implicated him:

> discovery or sanctions potentially implicating Mr. Blasingim [do not] lie entirely outside the work of the Special Master. For example, if the Special Master recommends re-opening discovery in *Blasingim* or further proceedings to determine whether Mr. Blasingim engaged in conduct that subjects him to sanctions, the Court will consider any such recommendation in the Special Master's Report and Recommendation and determine how to proceed at that point.

(*Blasingim* ECF No. 145, PageID #2389; *McCracken* ECF No. 57, PageID #570.)

### F.3.  New Discovery

Following this clarifying order, the Special Master reports that Mr. Blasingim's counsel have not participated in the Special Master proceedings. (*Blasingim*, ECF No. 166, PageID #4956; *McCracken* ECF No. 75, PageID #3099.) In April 2022, Plaintiffs and Liberty Steel submitted their respective positions to the Special

Master, which were extensive.  (*See Blasingim* ECF No. 174; *Blasingim* ECF No. 175; *Blasingim* ECF No. 177; *McCracken* ECF No. 76; *McCracken* ECF No. 77; *McCracken* ECF No. 78.)  At her request with the consent of the parties, and to afford the Special Master adequate time to review these materials, the Court set a deadline for her Report and Recommendation of May 20, 2022.  (*Blasingim* ECF No. 151; *McCracken* ECF No. 60.)

### F.3.a. Additional Production from Mr. Blasingim

Days before the Special Master issued her Report and Recommendation, Plaintiffs' counsel advised that Mr. Blasingim "had produced tens of thousands of new documents on May 9 and 11," 2022.  (*Blasingim*, ECF No. 166, PageID #4957; *McCracken* ECF No. 75, PageID #3100.)  Counsel represented that this production results from applying the proper supplemental protocol that the parties intended for Epiq to perform in December 2020.  In the cover email for the production, counsel for Mr. Blasingim explained:

> As was discovered during the Special Master proceeding, when Epic [*sic*] previously performed the search of the image of Blasingim's cell phone, it used the original search terms that the parties previously provided to Epic to run on different devices earlier in the case and did not search for the additional search terms identified in Plaintiffs' Modified Search Term List 12.15.2020 (attached).

> We asked Epic [*sic*] to go back and to run a search of the image of Blasingim's cell phone for all of the search terms in the attached Plaintiffs' Modified Search Term List 12.15.2020.  Attached are the Search Terms Report for that revised search and a link to Liberty Document Production Volume 010 – Blasingim Supp Cell where you can access the documents that Blasingim is producing based upon the revised search.

(*Blasingim* ECF No. 166-4, PageID #4976; *McCracken*, ECF No. 75-4, PageID #3119.)

34

### F.3.b. Items Missed in the *McCracken* Settlement

Liberty Steel acknowledges that at least six documents identified through the searches conducted at Mericle's direction and in the Special Master proceedings are "potentially violative" of the *McCracken* settlement agreement and were "overlooked" in Liberty Steel's remediation process. (*Blasingim* ECF No. 175, PageID #6434, #6441, #6443–45 & #6454; *McCracken* ECF No. 77, PageID #3289, #3296, #3298–300 & #3309.) These documents include at least the following:

| 1 | MCCRACKEN005988–90 | June 29, 2017 email from Mr. McCracken (using his monarchsteel.com email account) to Grasso directly forwarding "coil quote" information from a customer; Grasso in turn forwarded the information to another Liberty employee, asking "do we have inventory?" |
|---|---|---|
| 2 | MCCRACKEN043270 | August 24, 2017 text message from Mr. McCracken to Grasso, communicating what appears to be Monarch Steel customer bid information. |
| 3 | MCCRACKEN043269 | August 24, 2017 text message from Mr. McCracken to Grasso, communicating information about a Monarch Steel customer bidding process and stating "I have [someone] working on getting Steve the bid package." |
| 4 & 5 | MCCRACKEN005818–21 LIB055512–13 | August 25, 2017 email from Mr. McCracken (using his monarchsteel.com email account) to Grasso regarding "bullet points we [Monarch Steel] agreed to" on an MTD contract; Grasso in turn forwarded the information internally. |
| 6 | MCCRACKEN043282 | August 31, 2017 text message from Mr. McCracken to Grasso, communicating what appears to be Monarch Steel's customer bid information. |

(*Id.*)  Plaintiffs maintain that Liberty Steel improperly retained approximately seven additional documents as well.  (*Blasingim* ECF No. 174-7, PageID #6402–08 (documents identified with yellow highlighting); *McCracken* ECF No. 76-7, PageID #3257–63.)

### G.    Attorney Turnover

In her Report and Recommendation, the Special Master mentions the attorney turnover for Liberty Steel. (*Blasingim* ECF No. 166, PageID #4952; *McCracken* ECF No. 75, PageID #3095.)  She details that turnover, and there is no need to repeat it here.  (*Id.*)  In her view, "[t]he frequent turnover of counsel for Liberty no doubt contributed to the discovery issues that have been addressed through these Special Master proceedings." (*Id.*)  Further, the Special Master notes that Liberty Steel used attorney turnover as "a fallback explanation for [its] inability to manage certain of its discovery obligations in *Blasingim*, both during the course of discovery and during these proceedings." (*Blasingim* ECF No. 166, PageID #4952–53; *McCracken* ECF No. 75, PageID #3095–96.)

Liberty Steel objects to the Special Master's reference to attorney turnover as a contributing factor to the issues addressed in the Special Master proceedings. (*Blasingim*, ECF No. 197, PageID #9962; *McCracken*, ECF No. 80, PageID #3815.) For this position, Liberty Steel points to the docket, which shows no turnover at Gallagher Sharp from summer 2019 to June 2021.  (*Id.*)  It also maintains that it had the right to use different counsel in *McCracken* and *Blasingim* and, for that matter, the *Sanko* litigation in which Grasso's cell phone was imaged.  (*Id.*)

36

The Court **OVERRULES** this objection for two reasons. First, the record belies Liberty Steel's objection. The lawyer at Gallagher Sharp who principally handled the day-to-day litigation in *Blasingim* attests that she left the firm in February 2021. (*Blasingim* ECF No. 156-22, ¶ 2, PageID #3576; *McCracken* ECF No. 65-2, ¶ 2, PageID #1719.) At the same time that she began preparing for that transition, in late 2020, the record shows that discovery in *Blasingim* took a turn for the worse and the problems escalated. For example, at that time Liberty Steel's counsel provided the supplemental protocol to Epiq to search the electronically stored information on the cell phones of Mr. Campbell and Mr. Blasingim but overlooked sending the modified search terms. (*Blasingim* ECF No. 156-22, ¶ 10, PageID #3578; *McCracken* ECF No. 65-22, ¶ 10, PageID #1721.) By then, as noted above, the transition of counsel from Dentons to Gallagher Sharp had occurred. When Mr. Campbell and Mr. Blasingim testified in November 2020 that their individual cell phones had been imaged but not produced, Gallagher Sharp investigated and determined that this oversight resulted from the transition of counsel when Dentons withdrew. (*Blasingim* ECF No. 154-19, PageID #2727; *McCracken* ECF No. 63-19, PageID #902; *see also Blasingim* ECF No. 156-22, ¶ 8, PageID #3577–78; *McCracken* ECF No. 65-22, ¶, PageID #1720–21.) Contrary to Liberty Steel's claim (*Blasingim*, ECF No. 197, PageID #9962; *McCracken*, ECF No. 80, PageID #3815), the record makes clear that the use of multiple firms and turnover within those firms played a direct role in bringing about the issues that necessitated the appointment of the Special Master.

Second, nothing about the multiple firms Liberty Steel used over time in these two cases or the turnover those firms experienced undermines the Special Master's conclusions or recommendations. If anything, the Special Master references those facts as a potentially mitigating explanation for Liberty Steel's discovery failures for a reason other than willfulness. In this respect, the Special Master gave Liberty Steel the benefit of the doubt. Based on the entirety of the record, the Court finds that Liberty Steel's strategy for employing counsel and deploying them in these cases directly contributed to the conduct giving rise to and the need for these proceedings for contempt and discovery sanctions.

Certainly, Liberty Steel has the right to retain different counsel in *Blasingim*, *McCracken*, and *Sanko*. But that is not the issue. Factually, the record shows that the way in which Liberty Steel managed these multiple counsel in these different cases over time complicated discovery in *Blasingim* and investigation of the motion for contempt in *McCracken* and created opportunities for noncompliance with Liberty Steel's obligations in these cases. In fact, the record demonstrates that Liberty Steel has continued to complicate these Special Master proceedings by the way it has used counsel. It continues to employ two sets of lawyers from different firms to handle *Blasingim* and *McCracken* separately, even though the Court long ago consolidated these proceedings. These teams of lawyers file separate briefs, multiplying the work of Plaintiffs, the Special Master, and the Court. Thus far, the Court has indulged this improper practice *only* because of the stakes of these proceedings for Liberty Steel. But after the date of this Order, it will not do so.

38

### H.     Final Points About These Factual Findings

To close out its findings of fact and discussion of the relevant background, the Court ends with two final points.

*First*, Liberty Steel objects that the Special Master improperly considered and relied on summaries and an appendix that Plaintiffs prepared containing misrepresentations, misleading statements, and inaccuracies.  (*Blasingim* ECF No. 197, PageID #9955–58; *McCracken* ECF No. 80, PageID #3808–11.)  Liberty Steel maintains that the Court or Special Master should have stricken Plaintiffs' appendices and summaries (*Blasingim* ECF No. 197, PageID #9957; *McCracken* ECF No. 80, PageID #3810), but never so requested.  Therefore, it has forfeited that particular objection.  In addressing this objection, the Court notes that Liberty Steel provided its own summaries.  (*See, e.g.*, *Blasingim* ECF No. 197-1; *Blasingim* ECF No. 197-2; *McCracken* ECF No. 80-1; *McCracken* ECF No. 80-2.)  In a case such as this, with a sprawling and complicated record, the use of such aids is appropriate.  The record shows, and the Court finds, that the Special Master considered the voluminous submissions of all counsel and parties in preparing her Report and Recommendation.  Further, it shows that the Special Master's Report and Recommendation did not adopt the characterizations or views of any particular party.  Her findings and recommendations are her own.  To the extent that Liberty Steel objects to review or consideration of these appendices, summaries, and other materials, the Court notes that, in making its findings of fact, it has reviewed and relied on the original source documents in addition to summaries from the parties.  For these reasons, the Court **OVERRULES** these objections.

*Second*, because the ultimate decision rests with the Court and must be its own, the Court has conducted an independent review of the record in making these findings of fact.  Unless otherwise noted, the Court agrees with the Special Master on her findings about discovery and the relevant background.

## CONCLUSIONS OF LAW

Before evaluating the Special Master's Report and Recommendation, as well as the parties' motions and objections, on the substantive legal issues before the Court, the Court addresses a procedural point.  Liberty Steel relies on the Court's Appointing Order to argue that Plaintiffs may not file a motion in response to the Special Master's Report and Recommendation.  Specifically, the Appointing Order provides for review of the Special Master's Orders.  (*Blasingim* ECF No. 122, PageID #2068; *McCracken* ECF No. 43, PageID #427.)  Because that section of the Appointing Order refers only to objections, and not to motions, Liberty Steel maintains that Plaintiffs' motion for clarification is improper.  (*Blasingim* ECF No. 198, PageID #9996–98; *McCracken* ECF No. 81, PageID #3849.)  At the same time, however, Liberty Steel moves for modification of the Special Master's Report and Recommendation in certain respects.  (*See, e.g.*, *Blasingim* ECF No. 159; *McCracken* ECF No. 68.)

Aside from the inconsistency with its own practice, Liberty Steel's argument relies on an overly technical reading of the Appointing Order and elevates form over substance.  Regarding review of the Special Master's work, the Appointing Order provides that the parties may proceed pursuant to Rule 53(f)(2), which in turn authorizes parties to move to adopt or modify as well as object. Although Rule 53(f)(2)

40

permits a court to adjust the deadline for doing so, it does not similarly authorize a court to foreclose any opportunity for a party to move or object.  To the extent Liberty Steel's argument has any merit, and the Court thinks it has none, the Court construes each party's motions for clarification or modification of the Report and Recommendation as objections and proceeds to analyze them on their merits.

## I.      Contempt in *McCracken*

"[A] court must exercise its power to levy sanctions 'with restraint and discretion.'"  *Rajotte v. Carter (In re Rajotte)*, 81 F. App'x 29, 35 (6th Cir. 2003) (quoting *In re Downs,* 103 F.3d 472, 478 (6th Cir. 1996)).  "A litigant may be held in contempt if his adversary shows by clear and convincing evidence that 'he [violated] a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'"  *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987) (quoting *SEC v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981)).  These limitations, particularly the requirement for a definite and specific order, guard against "arbitrary exercises of the contempt power."  *Gascho v. Global Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017).  "Contempt is a measure of last resort, not first resort."  *Id.* at 799–800 (citing *Young v. United States*, 481 U.S. 787, 801 (1987)).

A contempt proceeding starts with "the basic proposition that all orders and judgments of courts must be complied with promptly."  *Cincinnati Bronze*, 829 F.2d at 590 (quotation omitted).  Under the law of this Circuit, to determine whether a party should be held in civil contempt, the court must consider whether the party "took all reasonable steps within [its] power to comply with the court's order," not

41

whether the party acted in good faith. *Glover v. Johnson*, 934 F.2d 703, 708 (6th Cir. 1991) (citations omitted). Therefore, good faith is not a defense, but impossibility is. *Id.* The party to be held in contempt has the burden of proving impossibility. *Id.*

Further, willfulness or intent to disobey are not required to hold a party in civil contempt. *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996). "A decision on a contempt petition is within the sound discretion of the trial court," and "the power 'to punish for contempts' should not be used lightly . . . ." *Electric Workers Pension Tr. Fund of Loc. Union #58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003) (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911)).

### I.A.   The Special Master's Recommendation

Based on her review of the record, the parties' arguments, and her management of the proceedings pursuant to the Appointing Order, the Special Master concludes that "the record here supports a finding of contempt." (*McCracken* ECF No. 75, PageID #3102.) She bases this conclusion both on "what has transpired in *Blasingim*" and on Liberty Steel's admission that it "did not take all reasonable steps within its power to comply with its obligations under the Settlement Agreement to destroy and not retain Monarch Protected Property and Information." (*Id.*)

In particular, for cost reasons, Liberty Steel "chose to rely on in-house resources rather than a third-party forensic service to carry out the remediation, and did not consider all potential sources of information within Liberty's systems." (*Id.*) Because at the time of the *McCracken* settlement the record showed that Liberty Steel "was actively recruiting and receiving information from other Monarch

42

employees," the Special Master found the company's conduct "at the very least cavalier." (*Id.*)

### I.B.    The Court's Finding on Contempt

Based on Liberty Steel's objections, the Court proceeds de novo in determining whether a finding of contempt is warranted.  In *McCracken*, the Court entered an Order, which counsel for the parties signed when they presented it to the Court, prohibiting Liberty Steel from "retaining . . . Monarch's 'protected property and information' as defined in the parties' Settlement Agreement." (*McCracken* ECF No. 21, PageID #134.)  This clear directive contains but a single exception:  "Counsel for Defendants and Defendants' forensic expert(s) may retain a copy of Monarch's 'protected property and information' for the sole purpose of this case." (*Id.*)  Even then, the Court's Order prohibits counsel from copying or disclosing Monarch Steel's protected property and information "to their clients or anyone without agreement of the parties or order of the Court." (*Id.*)

This Order incorporates the definition of Monarch's "protected property and information" from the parties' settlement agreement, which defines the term as follows:

> 3.    <u>Agreement Not to Use Monarch's Property and Information</u>. McCracken, JIMMYMAC, and Liberty are prohibited from using, copying, retaining, or disclosing Monarch's trade secret property and protected information as defined by federal and Ohio law. Notwithstanding trade secret or protected information status, McCracken, JIMMYMAC, and Liberty are also prohibited from using, copying, retaining or disclosing any Monarch documents or information obtained from Monarch's databases, systems, or records whether in electronic or paper form that McCracken/JimmyMac LLC has secured from his prior employment with Monarch. (All of this information to be defined as "Monarch's Protected Property and Information").

(*McCracken* ECF No. 77-1, PageID #3328.)  This definition expressly includes at least two categories of information:  (1) "trade secret property and protected information as defined by federal and Ohio law"; and (2) "Monarch documents or information obtained from Monarch's databases, systems, or records whether in electronic or paper form that McCracken/JimmyMac LLC has secured from his prior employment with Monarch." (*Id.*)  Notably, the latter is not limited to information that constitutes a trade secret; it extends more broadly.  The parenthetical closing paragraph three of the Court's Order in *McCracken* makes clear that the defined term "Monarch's Protected Property and Information" extends at least to both of these categories.  (*Id.*)

Without question, Liberty Steel had knowledge of the Court's Order.  Indeed, it signed it and the settlement agreement that defined Monarch Steel's protected property and information.  The Court finds that the Order in *McCracken*, which the parties drafted and the Court signed and entered, is definite and specific in prohibiting Liberty Steel from retaining Monarch Steel's protected property and information as defined.  Although the burden of establishing that an order is definite and specific is heavy, *Gascho*, 875 F.3d at 800, the record demonstrates that the Court's Order in *McCracken* imposes this obligation on Liberty Steel.

Therefore, as the Special Master noted, the question becomes whether Liberty Steel "took all reasonable steps within [its] power to comply with the court's order." *Glover*, 934 F.2d at 708.  Good faith is not a defense, *id.*, and willfulness or intent to disobey are not required, *Rolex Watch U.S.A.*, 74 F.3d at 720.  The record shows that it did not.  "Liberty willingly admits that certain documents that violated the

44

Settlement Agreement were inadvertently overlooked." (*McCracken* ECF No. 68, PageID #2991.)  The Court agrees that inadvertence might not rise to the level of contempt.  But Liberty Steel's conduct goes far beyond that.

The record shows by clear and convincing evidence, and the Court finds, that Liberty Steel undertook efforts to appear to comply with the Court's Order in *McCracken*, while in fact skirting it.  From the beginning, Liberty Steel made false statements to the Court in *McCracken* regarding compliance with the obligations it voluntarily undertook to resolve that litigation.  In connection with the settlement, Liberty Steel's Chief Executive Officer at the time, James Grasso, swore under penalty of perjury that "Liberty further instructed a third party forensic expert to delete all Monarch Protected Property and Information (and copies)." (*McCracken* ECF No. 63-2, ¶ 4, PageID #742.)  That representation to the Court is false.  Instead, the Special Master found and the record shows that Liberty Steel relied on in-house personnel and resources to fulfill its obligations under the settlement agreement. (*McCracken* ECF No. 75, PageID #3102.)

Further, the record demonstrates that Liberty Steel's efforts to identify and remediate the information that the Court ordered it not to retain were inadequate and incomplete.  The company focused on only a subset of materials and locations where Monarch Steel's protected information might be found:  "emails to or from McCracken" and "files and documents containing Monarch Protected Property and Information" (*McCracken* ECF No. 77-2, ¶¶ 5(b) & 5(c), PageID #3359; *McCracken* ECF No. 77-2, PageID #3374–78.)  To carry out this inadequate search, Liberty Steel

relied on an IT employee it contemporaneously fired because "she lacked the necessary skillset and experience to handle Liberty's IT needs." (*McCracken* ECF No. 77-2, ¶¶ 5(b), PageID #3359; *see also McCracken* ECF No. 77, PageID #3283.)

Moreover, as the Special Master notes, at the same time Liberty Steel was ostensibly working to comply with the Court's Order in *McCracken*, Liberty Steel was actively recruiting other employees of Monarch Steel.  (*McCracken* ECF No. 75, PageID #3102.)  Both Mr. Campbell and Mr. Blasingim emailed and texted information about Monarch Steel's business and from Monarch Steel's systems to themselves, each other, and to Liberty Steel.  (*Blasingim* ECF No. 166, PageID #4946–47; *McCracken* ECF No. 75, PageID #3089–90.)  Because Liberty Steel did not obtain these materials from Mr. McCracken's prior employment with Monarch Steel, Liberty Steel's possession of these documents and information violates the Court's Order in *McCracken* if they constitute trade secrets under federal or State law.  (*See McCracken* ECF No. 77-1, PageID #3328.)

But the Court need not decide that matter for two reasons.  First, the record establishes Liberty Steel's bad faith in making efforts to comply with the Court's Order in *McCracken*.  Representing one thing to a court and an adversary in litigation and doing the opposite shows a lack of good faith, even if it were a defense to a finding of contempt.  Second, the record as a whole developed in the Special Master proceedings demonstrates that Liberty Steel failed to take reasonable steps, at almost every turn, to comply with the Court's Order that it not retain Monarch Steel's information obtained from Mr. McCracken.  Only when the Special Master held the

company's feet to the fire did it do the work required of it years earlier.  Even then, the proceedings resulted in production of some of that information only fortuitously.  By clear and convincing evidence, the record supports a finding that Liberty Steel is in contempt of the Court's Order in *McCracken*.

### I.C.    Liberty Steel's Objections and Arguments

Liberty Steel interposes several objections to the Special Master's Report and Recommendation based on a series of arguments directed to the procedural aspects of the Court's Order in *McCracken* and its substantive conduct in attempting to comply.  The Court addresses each in turn.

### I.C.1. Ambiguities

Liberty Steel maintains that the Court's Order in *McCracken* contains ambiguities that made flawless compliance impossible.  (*McCracken* ECF No. 68, PageID #2986.)  This argument depends on "the multitudes of interpretations that can be attributed to Monarch's Protected Property and Information."  (*Id.*, PageID #2987.)  Additionally, Liberty Steel points out that the parties never agreed to search terms for execution of the settlement agreement and, without them, could not know what the term means.  (*Id.*, PageID #2987 & #2988.)  Moreover, Liberty Steel's status as a competitor to Monarch Steel in a particular market frustrated compliance with such an indefinite and plastic term as Monarch's Protected Property and Information.  (*Id.*, PageID #2987 & n.2.)

A finding of contempt "cannot be based on 'a decree too vague to be understood.'"  *Gascho*, 875 F.3d at 800 (quoting *International Longshoremen's Ass'n, Loc. 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)).  In a contempt

proceeding, courts read "'decrees to mean rather precisely what they say,'" and ambiguities must be resolved in favor of persons charged with contempt. *Grace v. Ctr. for Auto Safety*, 72 F.3d 1236, 1241 (6th Cir. 1996) (quoting *NBA Props., Inc. v. Gold*, 895 F.2d 30, 32 (1st Cir. 1990)).  In this way, contempt is "reserved for those who 'fully understand' the meaning of a court order and yet 'choose to ignore its mandate.'" *Gascho*, 875 F.3d at 800 (quoting *International Longshoremen's Ass'n*, 389 U.S. at 76) (cleaned up).

Notwithstanding Liberty Steel's contentions now that its failure to comply has come to light, the record shows that the Court's Order in *McCracken* is definite and specific.  Liberty Steel fully understood the meaning of the Court's Order—indeed, it drafted the Order along with Monarch Steel and presented it to the Court.  On its face, the Court's Order prohibits Liberty Steel from "retaining . . . Monarch's 'protected property and information' as defined in the parties' Settlement Agreement." (*McCracken* ECF No. 21, PageID #134.)  That definition includes both trade secrets and "Monarch documents or information obtained from Monarch's databases, systems, or records whether in electronic or paper form that McCracken/JimmyMac LLC has secured from his prior employment with Monarch." (*McCracken* ECF No. 77-1, PageID #3328.)  While the former might create some room for disputes or disagreements, the latter does not.  Documents or information that Mr. McCracken took from Monarch Steel fall within the definition of "Monarch's Protected Property and Information" and the clear mandate of the Court's Order.

In sum, Liberty Steel argues that, "without at least search terms, the Parties never would have agreed on what did or did not constitute Monarch's Protected Property and Information." (*McCracke*n ECF No. 68, PageID #2988.) Notwithstanding this argument, the parties submitted an agreed order to the Court. Contrary to Liberty Steel's arguments, nothing in the Court's Order required the exchange of search terms or other cooperation between the parties to provide meaning to the prohibition that the Court retained jurisdiction to enforce. The Court's Order in *McCracken* is definite, specific, and unambiguous. Liberty Steel attempts to introduce or create ambiguity where none exists. Accordingly, the Court **OVERRULES** this objection.

### I.C.2. Reasonable Conduct

Where, as here, a party seeking civil contempt carries its heavy burden of showing the violation of a definite and specific court order, inability to comply with that order presents a defense. *United States v. Rylander*, 460 U.S. 752, 757 (1983). "Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action." *Id.*; *see also Gascho*, 875 F.3d at 800 (quoting *Gary's Elec.*, 340 F.3d at 378). To establish this defense, the contemnor must show an inability to comply that was not self-induced. *Gascho*, 875 F.3d at 802. It must also establish that it took all reasonable steps to comply. *Id.* A court must also consider whether the party "took all reasonable steps within [its] power to comply with the court's order," not whether the party acted in good faith. *Glover*, 934 F.2d at 708; *see also Gascho*, 875 F.3d at 802.

49

Liberty Steel argues that its steps to implement the settlement agreement, including deleting Mr. McCracken's email domain and tasking employees with searching for and deleting all email communications involving him show reasonable conduct that precludes a finding of contempt.  (*McCracken* ECF No. 81, PageID #3848.)  Further, it adds that the forensic search of its systems in the Special Master proceedings provides additional evidence showing that it did not act contemptuously.  (*Id.*, PageID #3849.)

These arguments suffer from two fatal flaws.  First, Liberty Steel cannot show an inability to comply with the Court's Order in *McCracken*.  In fact, the Special Master proceedings demonstrate Liberty Steel's ability to comply.  Compliance just took years, a motion for contempt, and the appointment of a Special Master.  It also took some effort on the part of counsel for Mr. Blasingim to figure out that Epiq did not apply the correct search terms.

Second, to the extent the record permits any colorable claim that Liberty Steel, for reasons beyond its control, was unable to comply with its obligations under the Court's Order, it still fails to show that it took reasonable efforts—let alone all reasonable efforts—to comply.  To the contrary, Liberty Steel only made reasonable efforts to comply after forcing Plaintiffs to seek contempt and under the direction and compulsion of the Special Master.

In short, this record defeats any claim on the part of Liberty Steel that it could not comply with the Court's Order in *McCracken*.  Further, the record belies Liberty Steel's claim that "flawless compliance would have required clairvoyance" on its part

50

to understand an ambiguous Court Order or what efforts it needed to undertake to comply. (*McCracken* ECF No. 68, PageID #2990.)  Nothing prevented Liberty Steel from returning to the Court to seek guidance on or modification of its obligations under the Court's Order or the parties' settlement agreement.  Instead, indulging a charitable interpretation of the record, Liberty Steel closed its eyes to its obligations and hoped for the best.  For these reasons, the Court **OVERRULES** Liberty Steel's objection and its motion to modify the Special Master's Report and Recommendation.

### I.C.3. Forensic Search

Liberty Steel objects to the Special Master's Report and Recommendation on the basis of the parties' history negotiating the settlement agreement.  (*McCracken* ECF No. 68, PageID #2985.)  In discussing the factual and procedural background of the matters before the Court, it also spends a fair amount of time detailing the extensive settlement negotiations between the parties in *McCracken*.  (*Blasingim* ECF No. 175, PageID #6424–26; *McCracken* ECF No. 77, PageID #3279–81.)  Liberty Steel maintains that the parties agreed that it could undertake remediation in-house without involving a third-party forensic expert to comply with its obligations under the Court's Order and the settlement agreement.

This argument and the recitation of the facts on which it depends suffer from two flaws.  Legally, this extrinsic evidence matters only if the parties' settlement agreement is ambiguous.  *See Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 683–85 (6th Cir. 2000) (explaining that under Ohio law extrinsic evidence is admissible only where the terms of a contract are ambiguous) (citations omitted).  But the agreement itself and the Court's Stipulated Order and Dismissal

in *McCracken* are not ambiguous.  The Order does not bar Liberty Steel from using any particular methods to ensure that it does not retain Monarch Steel's protected property and information.

Factually, Liberty Steel's version of events presents a misleading and inaccurate view of the record.  For example, Liberty Steel states that the "early resolution reported to the Court was described as an 'agreement in principle.'" (*Blasingim* ECF No. 175, PageID #6424; *McCracken* ECF No. 77, PageID #3279.)  But the parties reported to the Court, definitively, that "the matter has been resolved." (*McCracken* ECF No. 15, PageID #119.)   Its version of the facts depends on the affidavit of its Chief Financial Officer, Jason Mericle, who attests that in correspondence Liberty Steel objected to a forensic search and attached an "agreement in principle."  (*Blasingim* ECF No. 175-2, ¶ 4, PageID #6503; *McCracken* ECF No. 77-2, ¶ 4, PageID #3358.)   The referenced correspondence between the parties dates from October 26, 2017, about a month before the settlement itself. (*Blasingim* ECF No. 175-2, PageID #6509; *McCracken* ECF No. 77-2, PageID #3364.) In this way, the record demonstrates that the parties resolved any ambiguity regarding the terms of the settlement by the time they advised the Court of the resolution and executed the settlement agreement.

In the end, whether the parties agreed that Liberty Steel could use in-house resources or not has no bearing on the record as it relates to contempt.  The definition of Monarch Steel's protected property and information incorporated in the Court's Order in *McCracken* does not turn on the method of compliance.  Nor does the Court's

definite and specific Order that Liberty Steel not retain that information.  In fact, the Court's Order permits "Defendants and Defendants' forensic expert(s)" to retain a copy of the information at issue, but does not speak to whether those experts had to be independent or in-house.  (*McCracken* ECF No. 21, PageID #134.)  Accordingly, the Court **OVERRULES** Liberty Steel's objection and its motion to modify the Special Master's Report and Recommendation in this respect.

### I.C.4. *De Minimis* Violation

Even as it concedes that "a few potentially violative documents may have been overlooked," Liberty Steel suggests that no finding of contempt is warranted because "[a]ny potentially violative documents were *de minimis* violations of the Settlement Agreement."  (*McCracken* ECF No. 68, PageID #2982.)  Without more, Liberty Steel might have a meritorious argument on this point.  However, the record consists of more than a handful of documents the company retained notwithstanding the Court's Order in *McCracken*—some of which Liberty Steel admits violate that Order.  (*See id.* at n.1.)  It includes a false representation under penalty of perjury that Liberty Steel used a third-party forensic expert in its efforts to comply with the Court's Order and fulfill its obligations under the settlement agreement.  Instead, the record shows that Liberty Steel tasked an admittedly inadequate in-house employee who performed only a limited review.

Even if Liberty Steel correctly maintains that these documents are *de minimis*, stale, and work no harm to Monarch Steel, the record as a whole supports a finding of contempt because Liberty Steel failed to exhaust reasonable steps within its control to comply with the Court's Order.  Under the law, the focus remains on a party's

efforts to comply, not on the prejudice to the movant or the significance of a failure to comply.  Therefore, the Court's **OVERRULES** any objection Liberty Steel asserts on this basis.

### I.D.  Motions for Clarification or Modification

Plaintiffs seek clarification of the Special Master's Report and Recommendation to identify which documents Liberty Steel must forensically delete. (*McCracken* ECF No. 79, PageID #3782.)  For its part, Liberty Steel "takes no issue with requesting that K.L. Discovery 'securely and forensically delete documents and information that the parties agree were improperly retained from Liberty's systems, accounts, and devices at Liberty's expense.'" (*McCracken* ECF No. 68, PageID #2991.) Further, Liberty Steel seeks approval from the Court for KLD to delete the additional documents and information identified through the Special Master proceedings.  (*Id.*, PageID #2991–92.)

Because of the overlap with *Blasingim*, where adjudication of the merits of Plaintiffs' claims lies in the future, the Special Master recommends segregating those materials that potentially violate the settlement agreement (as opposed to those the parties agree actually violate it) pending the fact finder's determination whether they constitute trade secrets under federal or State law.  This distinction arises because of the Court's Order in *McCracken* on December 12, 2017 that Liberty Steel not retain any documents or information in its possession that the company obtained from Mr. McCracken.  (*McCracken* ECF No. 21.)  By that date, Liberty Steel was in possession of other information from Mr. Campbell and Mr. Blasingim.  But that latter information violates the settlement agreement, and by extension the Court's

54

Order in *McCracken*, only if it contains the proprietary information or trade secrets of Monarch Steel based on the definition of "Monarch's Protected Property and Information" in the settlement agreement.  These materials remain subject to the ongoing proceedings in the *Blasingim* case, and they are the materials the Special Master recommended that Liberty Steel segregate pending a determination of whether they constitute trade secrets.  (*See McCracken* ECF No. 75, PageID #3102–03.)  Specifically, the Special Master recommends:

> Documents and information that the parties agree was improperly retained in violation of the *McCracken* Settlement Agreement should be securely and forensically deleted from Liberty's systems, accounts, and devices at Liberty's expense.  Additional documents and information that have been identified through the Special Master process as potentially violative of the Settlement Agreement should be segregated pending determination by the trier of fact as to whether such materials contain or constitute "Monarch's trade secret property and protected information as defined by federal and Ohio law."

(*Id.*, PageID #3109; *see also id.*, PageID #3103.)

Liberty Steel's requested modification to the Report and Recommendation moots Plaintiffs' motion and avoids the complications arising from attempting to distinguish between the information at issue in *McCracken* that might or might not be in *Blasingim*.  Liberty Steel has no objection to having KLD delete from its systems and devices the information from *McCracken*—that is, information retained improperly in violation of the Court's Order in *McCracken*.  (*McCracken* ECF No. 68, PageID #2991.)  With respect to the latter category, involving documents and information at issue in *Blasingim*, Liberty Steel also agreed to purge this information, with the Court's approval.  (*Id.*, PageID #2991–92.)  Liberty Steel

requests a full list of these documents from Plaintiffs. (*Id.*, PageID #2992.)  Although Plaintiffs previously identified these documents (*see Blasingim* ECF No. 207, PageID #10260 n.3; *McCracken* ECF No. 90, PageID #4113 n.3), to avoid any confusion on the matter, the Court **GRANTS** the motions of Plaintiffs and Liberty Steel to clarify which documents Liberty Steel should forensically delete, at its cost, and **DIRECTS** the Special Master to oversee this process pursuant to Section II.A of the Appointing Order.

### I.E.    Remedy

Civil contempt is remedial, "designed to force the contemnor to comply with an order of the court." *Cunningham v. Hamilton Cnty.*, 527 U.S. 198, 207 (1999) (citing *Willy* v. *Coastal Corp.*, 503 U.S. 131, 139 (1992)).  Consistent with this remedial purpose, courts must use "[t]he least possible power adequate to the end proposed." *Gascho*, 875 F.3d at 799 (quoting *United States v. Wilson*, 421 U.S. 309, 319 (1975)). A court's discretion to punish contempt includes the power to frame sanctions so that they fit the violation in question. *Adcor Indus. v. Bevcorp, LLC*, 411 F. Supp. 2d 778, 793–94 (N.D. Ohio 2005) (citing *Elec. Workers Pension Tr. Fund*, 340 F.3d at 385). "[W]ilfulness is not an element of civil contempt, but the state of mind of the contemnor is relevant [] in the consideration of sanctions." *Gnesys, Inc. v. Greene*, 437 F.3d 482, 493 (6th Cir. 2005) (citing *Rogers v. Webster*, 776 F.2d 607, 612 (6th Cir. 1985)).

At bottom, civil contempt proceedings aim to bring a party into compliance, not to punish.  In this regard, the Court agrees with Liberty Steel that "[t]his contempt matter should be resolved by full and final purging of all documents that Plaintiffs

claim to be Monarch's Protected Property and Information." (*McCracken* ECF No. 81, PageID #3852.)  With the Court's rulings on the parties' motions for clarification and modification of the Report and Recommendation, Liberty Steel will largely come into compliance with the Court's Order in *McCracken*.  For the reasons already discussed, the Court **ORDERS** Liberty Steel to have KLD forensically delete documents and information from Liberty Steel's systems, accounts, and devices, at Liberty Steel's cost, under the supervision and direction of the Special Master.  That action will go a long way toward bringing Liberty Steel into compliance.  Three further actions, discussed below, are necessary fully to bring Liberty Steel into compliance and put the parties in the position they would have been in had Liberty Steel complied with the Court's Order in *McCracken* in 2017.

### I.E.1. Compensation for Losses

In addition to brining a contemnor into compliance, a court may compensate the injured party for its losses or damages from violation of the order.  *Unitronics (1989) (R"G) Ltd. v. Gharb*, 85 F. Supp. 3d 133, 142 (D.D.C. 2015).  Plaintiffs complain that the Special Master's Report and Recommendation did not recommend a procedural avenue for determination of their monetary damages resulting from Liberty Steel's contempt—namely, its retention and alleged use of Monarch's protected property and information.  (*McCracken* ECF No. 79, PageID #3783.)  They request a hearing to present evidence of injury based on Liberty Steel's contempt.  (*Id.*, PageID #3786.)

Procedurally, Liberty Steel points out that Plaintiffs failed to litigate the issue of compensatory damages before the Special Master.  (*McCracken* ECF No. 81,

PageID #3850.)  But outside the context of a jury trial, litigants frequently contest liability or entitlement to a remedy before incurring the additional burdens and complications attending the determination of its scope.  *See, e.g.*, *Gnesys*, 437 F.3d at 497 (noting that the district court order submission of compensatory damages evidence following the ruling on contempt).  After all, that threshold finding might moot the need for further work on damages or the nature and scope of a remedy.

Although Liberty Steel maintains that Plaintiffs should have litigated the question of damages before the Special Master, it is difficult to see the practicality of that suggestion where the record shows that, even days before the deadline for the Special Master to issue her Report and Recommendation, Mr. Blasingim produced a large volume of documents.  That sort of strategic timing, though not at the hands of Liberty Steel directly in that particular instance, shows the futility of Liberty Steel's position and argument now—either the Special Master proceedings would have continued on considerably longer or the parties had to accept deferring consideration of any remedy.

Where the Court consistently directed the Special Master to proceed on a tight schedule, Liberty Steel's position denies the litigation realities and is simply impractical.  Moreover, the Court did not expressly direct the Special Master to conduct separate proceedings to make the findings of fact a recommendation for compensatory damages entails, and she reasonably interpreted her charge to recommend a disposition of the motion for contempt to identify the broad remedies

that might be appropriate beyond the specifics that her work identified as particularly appropriate.

As one would expect, Liberty Steel contends that it did not use the documents the Special Master proceedings identified that it retained in violation of the Court's Order in *McCracken* or cause damage to Monarch Steel.  In response to Liberty Steel's position, at oral argument Plaintiffs presented a binder containing numerous documents, discovered during the Special Master proceedings, that they claim show Liberty Steel used Monarch Steel's protected property and information to cause Plaintiffs harm in the marketplace.  Plaintiffs argued that, in 2019, Liberty Steel competitively used information obtained in 2017 from Mr. McCracken, then not purged from its systems pursuant to the settlement agreement and Court's Order. Resolving this factual dispute will require further proceedings, as Plaintiffs point out.

In fashioning a remedy to compensate for any losses resulting from Liberty Steel's contempt, the Court makes three important notes.  First, no party asks to set aside the *McCracken* settlement agreement.  Nor does the Court see any reason to set it aside at this late date.

Second, Plaintiffs seek disgorgement of "any profits or monetary benefits [Liberty Steel] unjustly received based on the continued retention of Monarch's Protected Property and Information."  (*McCracken* ECF No. 79, PageID #3784.)  The Court has the power to order disgorgement as a remedy for contempt.  *See, e.g.*, *Tom James Co. v. Morgan*, 141 F. App'x 894, 899 (11th Cir. 2005).  As a remedy, disgorgement serves the equitable end of forcing a defendant to give up the amount

by which it was unjustly enriched; it does not compensate an injured party.  *Cernelle v. Graminex, L.L.C.*, 437 F. Supp. 3d 574, 607 (E.D. Mich. 2020).

Third, the interplay between *McCracken* and the ongoing litigation in *Blasingim* presents some challenges, including the risk of double recovery and invading the province of the jury in *Blasingim*.  Indeed, it might be extremely difficult, if not impossible, to award compensation for losses resulting from Liberty Steel's retention and alleged use of the information the Court ordered it to purge in *McCracken* without duplicating the damages a jury might award in *Blasingim*.  This consideration shows the wisdom of the Special Master's recommendation for deferring damages to the finder of fact in *Blasingim*.  (*McCracken* ECF No. 75, PageID #3109.)  With respect to determining compensation for any losses, the finder of fact in *Blasingim* would sit as an advisory jury, subject to the Court's findings of fact to support any compensation for Liberty Steel's contempt.  Further, the Court has confidence that its instructions to the jury will minimize any prejudice to Liberty Steel from proceeding in this manner, which in any event is a problem of its own making.

Regarding the interplay of the two cases, Liberty Steel contends that "the Special Master at times conflated the *McCracken* and *Blasingim* cases."  (*Blasingim* ECF No. 197, PageID #9970; *McCracken* ECF No. 80, PageID #3823.)  As an example, Liberty Steel points to a text message between Grasso and Mr. Campbell.  (*Id.*)  Contrary to its claim, the record shows that the Special Master made no recommendation that "the terms of the *McCracken* settlement should apply

prospectively to documents relating to Jon Campbell that are wholly unrelated to *McCracken*." (*Id.*)  Her point, if Liberty Steel genuinely does not understand it, is that, if Plaintiffs seek to establish that particular documents or information constitute trade secrets, a part of the definition of Monarch's protected property and information on which the Court does *not* rely in finding contempt, coordination of that finding for purposes of contempt in *McCracken* and trial in *Blasingim* presents difficult issues.  In any event, the Court's finding on contempt resolves any objection Liberty Steel has.  The matter of compensation, if any, for Plaintiffs' losses attributable to Liberty Steel's contempt remains to be resolved in the manner ordered.  Other than that, the two cases remain separate.

For these reasons, the Court agrees with the Special Master and defers any award of compensation for losses resulting from Liberty Steel's contempt to the trial in *Blasingim*.  Specifically, following an appropriate instruction that the Court already found Liberty Steel retained or possessed Monarch Steel's protected property and information, the Court will ask the finder of fact in *Blasingim* to advise whether to award compensation and, if so, in what amount.  This resolution is not ideal in terms of finality and completely remedying Liberty Steel's contempt immediately.  Under the circumstances, however, in the Court's view it most efficiently achieves the ends of the law with the least possible complications, disputes between the parties, and further litigation.  Accordingly, the Court **GRANTS IN PART** Plaintiffs' motion for clarification and **OVERRULES** Liberty Steel's objection to litigating any aspect of *McCracken* in *Blasingim*.

61

### I.E.2. Costs and Fees

Plaintiffs request an opportunity for recovery of their fees and costs for the Special Master proceedings.  (*McCracken* ECF No. 79, PageID #3785.)  For its part, Liberty Steel requests that the Court limit any sanction to the cost of remediation and KLD's fees.  (*McCracken* ECF No. 68, PageID #2983.)  It maintains that going further imposes a sanction out of proportion to the "few violative documents."  (*Id.*, PageID #2992.)  Additionally, Liberty Steel maintains that the Special Master declined to award fees and costs, so none are appropriate here.  (*McCracken* ECF No. 81, PageID #3854.)  On this score, Liberty Steel relies on the Special Master's rejection of Plaintiffs' request for "all fees and expenses associated with *McCracken* and *Blasingim* to date" to argue that she recognized as unwarranted any sanction beyond the narrow remedy for which it advocates.  (*Id.*, PageID #3849.)

This argument misrepresents the Special Master's recommendation by taking words from her Report and Recommendation out of context.  When addressing the remedy for both contempt *and* the discovery sanctions she recommends in *Blasingim*, the Special Master addressed Plaintiffs' request for "extraordinary sanctions, up to entry of a default judgment against Liberty and an award to Plaintiffs of 'all fees and expenses associated with McCracken and Blasingim to date.'"  (*McCracken* ECF No. 75, PageID #3108 (quoting Plaintiffs' submission).)  In the next sentence, the Special Master says that she did "not believe the circumstances warrant such punitive sanctions, and decline[d] to recommend them to the Court."  (*Id.*)  This context shows that the punitive sanctions to which the Special Master refers are a default judgment in *Blasingim* and shifting *all* fees and costs in both *McCracken* and

*Blasingim*, contrary to the American Rule.  The following sentence dispels any doubt.  "As Liberty points out in its Submission on Sanctions, dismissal 'is the sanction of last resort.'"  (*Id.* (quoting Liberty Steel's submission).)  Because there is nothing in *McCracken* to dismiss, when she referred to case-terminating sanctions, the Special Master means in *Blasingim*.

In fact, the Special Master goes on to recommend "that the Court impose sanctions on Liberty, requiring it alone to bear the cost of 'curing' its contempt and discovery failures."  (*Id.*, PageID #3109.)  In this way, the recommendation aligns with the principles governing contempt and the remedies the law directs the Court to fashion.  Against that legal background, the Court reads the Special Master's recommendation that Liberty Steel "exclusively bear all fees and expenses associated with these Special Master proceedings, including the Special Master compensation and third-party vendor fees" as extending to an award of attorneys' fees and costs that Plaintiffs would not otherwise have incurred but for these proceedings.  (*Id.*)  And the Court agrees with that recommendation.

Liberty Steel argues that an award of fees and costs is not appropriate because Plaintiffs are not prevailing parties based on the formal disposition of Plaintiffs' motion for contempt, which is granted only in part.  (*McCracken* ECF No. 68, PageID #2992.)  Formally, that disposition remains the same, because the Court does not go as far as Plaintiffs request in their various submissions and arguments.  But Plaintiffs have secured a finding of contempt and, in that sense, which the Court views as the most consequential on the facts and circumstances presented, are the

prevailing party.  *See, e.g.*, *North Atl. Operating Co., Inc. v. eBay Seler Dealz_for_You*, No. 17-10964, 2018 WL 3031092, at *7 (E.D. Mich. June 19, 2018) ("Plaintiffs are the prevailing party because the Court found [] Defendants in contempt . . . .").  Moreover, the purposes of contempt under the law support an award of the fees and costs Plaintiffs incurred to force compliance with the Court's Order in *McCracken*.

Additionally, Liberty Steel argues that the documents uncovered in the Special Master proceedings duplicate those provided in the course of discovery in *Blasingim*, making any sanction beyond those it agreed to bear unwarranted.  (*McCracken* ECF No. 68, PageID #2992 & n.4.)  This position ignores the fact that, when the documents surfaced, Liberty Steel resisted further investigation and discovery in *Blasingim*, insisting that *McCracken* provided the exclusive avenue for any relief on the matter.  (*Blasingim* ECF No. 166, PageID #4951; *McCracken* ECF No. 75, PageID #3094; *see also Blasingim* ECF No. 166-3; *McCracken* ECF No. 75-3.)  At the time, no one knew whether Liberty Steel had additional documents, and the question presented a fair matter for reasonable inquiry.  Once Liberty Steel resisted further inquiry in *Blasingim*, it made these proceedings inevitable.  When the issues surfaced in *Blasingim*, transparency and cooperation would have better served Liberty Steel, whatever its formal obligations and responsibilities under the Rules.  Having chosen a different path, it cannot be heard to complain now about bearing the full consequences and costs of its actions.

### I.E.2.a. Attorneys' Fees

Compensation of the injured party in a contempt proceeding "often consist[s] of reasonable costs (including attorneys' fees) incurred in bringing the civil contempt

64

proceeding." *Unitronics*, 85 F. Supp. 3d at 142 (quoting *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 70, 76 (D.D.C. 2003)).  The remedial purposes of contempt suggest that a court may award reasonable attorneys' fees and costs as part of the losses the injured party sustains as a result of the violation of the court order.  *Id.* at 142–43; *Landmark Legal Found.*, 272 F. Supp. 2d at 86 (citing *United States v. United Mine Workers*, 330 U.S 258, 303 (1947)).

Some authority requires a finding of willfulness before a court may award fees in connection with a finding of contempt.  *See, e.g.*, *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718 (1967) ("In a civil contempt action occasioned by willful disobedience of a court order an award of attorney's fees may be authorized as part of the fine to be levied on the defendant."); *Liberis v. Craig*, 845 F.2d 326 (6th Cir. 1988) ("[A]ttorneys' fees may be awarded to the prevailing party for the 'wilfull disobedience of a court order . . . as part of the fine to be levied on the defendant.'") (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 258-59 (1975)). In such cases, an award of fees is appropriate "where the 'contemnor had actual notice of the Court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply.'" *Chere Amie, Inc. v. Windstar Apparel, Corp.*, 175 F. Supp. 2d 562, 567 (S.D.N.Y. 2001) (quoting *Bear U.S.A. v. Kim*, 71 F. Supp. 2d 237, 249 (S.D.N.Y. 1999)).

In this case, the Court finds that Liberty Steel's contempt was willful in at least three respects.  First, the record shows that the company provided a false affidavit to the Court in *McCracken* attesting to steps it took to comply with the

65

Court's Order and the parties' settlement agreement that it did not actually take. Second, Liberty Steel tasked an admittedly unqualified employee with remediation and limited the scope of those efforts.  Third, when confronted with facts learned in discovery in *Blasingim* exposing its failure to comply with the Court's Order and to discharge its obligations under the settlement agreement Liberty Steel multiplied the proceedings by playing the *McCracken* and *Blasingim* cases against each other to try to avoid the consequences of its actions.

In short, the record shows that Liberty Steel had actual notice of the Court's Order in *McCracken*, was able to comply with it (and, indeed, did so through the Special Master proceedings, as discussed above), did not seek modification of the Court's Order in *McCracken* at any time, and did not make good-faith efforts to comply.  For these reasons, and to compensate Plaintiffs for their efforts to secure compliance with the Court's Order in *McCracken*, the Court finds that an award of Plaintiffs' reasonable attorneys' fees is warranted, appropriate, and necessary. Therefore, the Court **GRANTS** Plaintiffs' motion for clarification, **OVERRULES** Liberty Steel's objections to an award of attorneys' fees, and **ORDERS** Liberty Steel to pay Plaintiffs' reasonable attorneys' fees incurred in connection with the motion for contempt and Special Master proceedings under the supervision and direction of the Special Master.

### I.E.2.b. Costs

Plaintiffs ask that Liberty Steel pay all fees and expenses associated with the Special Master proceedings, including the Master's compensation and third-party vendor fees.  (*McCracken* ECF No. 79, PageID #3786.)  Liberty Steel objects to paying

costs beyond those of KLD associated with purging the documents located on its systems through the Special Master proceedings.  (*McCracken*, ECF No. 68, PageID #2992.)  Primarily, these costs involve those of the Special Master.

The Special Master found, and the Court agrees, that "these Special Master proceedings were necessary to cure certain failings by Liberty in executing its obligations under the *McCracken* Settlement Agreement." (*McCracken* ECF No. 75, PageID #3108.)  From the outset, the Court placed shifting the costs of the Special Master proceedings on the table as a potential remedy, depending on what they showed and how they progressed.  (*See McCracken* ECF No. 37, PageID #394; *McCracken* ECF No. 43, PageID #431.)  Because Liberty Steel's noncompliance in *McCracken* and insistence on litigating in *McCracken* after discovery of that noncompliance in *Blasingim* necessitated these proceedings, the Court **GRANTS** Plaintiffs' motion for clarification, **OVERRULES** Liberty Steel's objections to shifting the costs of the Special Master proceedings, and **ORDERS** Liberty Steel to compensate Plaintiffs for those costs, including the Special Master's compensation, under the direction and supervision of the Special Master.

### I.E.3. Segregation and Destruction of Information

The Special Master recommends that the documents and information Liberty Steel retained in violation of the Court's Order in *McCracken* "should be securely and forensically deleted from Liberty's systems, accounts, and devices at Liberty's expense." (*McCracken* ECF No. 75, PageID #3109.)  As discussed above, the Court's disposition of Liberty Steel's requested modification supersedes this recommendation.  Accordingly, the Court **DIRECTS** the Special Master to oversee

the process for the parties' agreement on the documents to purge and their forensic deletion at Liberty Steel's cost.

### I.E.4. Remedial Findings

Liberty Steel compares the motion for contempt to the Court's ruling in another case, *Metron Nutraceuticals, LLC v. Cook*, No. 1:20-cv-1803, 2022 WL 1616536 (N.D. Ohio May 23, 2022).  (*See McCracken* ECF No. 81, PageID #3853.)  At least with respect to contempt, however, the proceedings are nothing alike.  Throughout its management of *Metron Nutraceuticals*, motions for sanctions and misconduct have plagued the Court.  At one point, the Court found that one party was attempting to use such tactics to secure a victory on technical grounds, rather than on the merits.  *McCracken* presents a different circumstance.  That case is already over and settled.  Any gamesmanship or misconduct, as opposed to aggressive lawyering, appears on the part of Liberty Steel—at the very least in its insistence that any discovery or investigation of documents that it should not have retained as ordered in *McCracken* take place only in that case.

For all these reasons, the Court finds that the record supports the totality of the remedies awarded and that these remedies will bring Liberty Steel fully into compliance with the Court's Order in *McCracken* while using the least power to do so and compensating Plaintiffs for their losses.  Because these remedies will require some degree of communication and cooperation between the parties, which is strained past the breaking point, the Court **DIRECTS** the Special Master to conduct such further proceedings as necessary and appropriate to carry this Order into effect, at Liberty Steel's cost.

## II.    Discovery Sanctions in *Blasingim*

Rule 26(g)(1) requires, among other things, that every discovery response or objection "must be signed by at least one attorney of record."  By signing, counsel makes important certifications, including that (1) a disclosure "is complete and correct as of the time it is made"; and (2) a discovery response or objection is consistent with the rules and not made for any improper purpose.  Fed. R. Civ. P. 26(g)(1)(A) & (B).  These certifications must come "after a reasonable inquiry."  Fed. R. Civ. P. 26(g)(1).  "If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both."  Fed. R. Civ. P. 26(g)(3).

"[I]f the party learns that in some material respect the disclosure or response is incomplete or incorrect," Rule 26(e) requires supplementation of discovery responses in a timely manner.  Fed. R. Civ. P. 26(e)(1)(A).  It also requires supplementation where additional responsive or corrective information "has not otherwise been made known to the other parties during the discovery process or in writing."  *Id.*

"If a party fails" to supplement a disclosure under Rule 26(e), Rule 37(c)(1) provides for a mandatory self-executing exclusionary rule as a sanction and authorizes a court to award other appropriate sanctions in addition to or instead of exclusion.  Fed. R. Civ. P. 37(c)(1).  In addition to the self-executing sanction of exclusion, or instead of it, the Rule authorizes a court to award reasonable expenses, including attorneys' fees, caused by the failure to disclose or supplement; to inform

the jury of the party's failure; and to impose other appropriate sanctions, including ordering that certain facts or matters be taken as true, prohibiting a party from supporting certain claims or defenses or from introducing certain evidence; striking pleadings, and entering a default judgment. Fed. R. Civ. P. 37(c)(1) (cross-referencing Fed. R. Civ. P. 37(b)(2)(A)(i)–(vi)).

The purpose of imposing sanctions is to "assure both future compliance with the discovery rules and to punish past discovery failures, as well as to compensate a party for expenses incurred due to another party's failure to properly allow discovery." *Bell v. Automobile Club of Mich.*, 80 F.R.D. 228, 229 (E.D. Mich. 1978).

### II.A. Plaintiffs' Discovery Requests and Liberty Steel's Responses

To frame the discussion of discovery sanctions, the Court provides a summary and greatly simplified overview of the relevant discovery requests and responses resulting in the Special Master's Report and Recommendation. In short, the record shows that Plaintiffs served discovery requests for information to determine whether Liberty Steel possessed documents, data, or information obtained from American Consolidated or Monarch Steel through any of its current or former employees. Plaintiffs contend that those materials constitute their trade secrets and that Liberty Steel used them unlawfully to compete. The merits of those claims, and Defendants' defenses, is not the subject of these proceedings and remains for a jury to determine.

In particular, Plaintiff served a request for production for all documents and data in Liberty Steel's possession or control that relate to American Consolidated or Monarch Steel. Specifically, Request for Production No. 8 sought:

> All documents and data that are in your possession or under your control and that relate to American Consolidated Industries, Inc. or any of its subsidiaries, including, but not limited to Monarch Steel Company, Inc. and Monarch Steel of Alabama, Inc. (all such entities collectively referred to as "Monarch") or Monarch's operations, products, customers, suppliers, wholesalers, business contacts, plans, strategies, employees, pricing or support services.

(*Blasingim* ECF No. 174-2, PageID #6343.)  In response, Liberty Steel did not object and stated:  "Defendant does not have any documents responsive to this request." (*Id.*)  Liberty Steel provided this response on September 12, 2019.  (*Id.*, PageID #6352.)

Plaintiffs' first interrogatory asked for, among other details, the dates of employment at Liberty Steel for Mr. Campbell and Mr. Blasingim.  In response, and without objection, Liberty Steel provided the dates and added that "James Grasso at Liberty then began to communicate with Jon Campbell via text message starting on July 25, 2017."  (*Id.*, PageID #6337.)  This response directly places at issue electronically stored information on Grasso's phone that relates, without question, to one of the individual named Defendants in this action and that pre-dates the settlement agreement and Court Order in *McCracken*.

These requests framed a considerable amount of back-and-forth in discovery between the parties.  As discovery progressed, Plaintiffs' counsel was aggressive and relentless, raising multiple discovery disputes with the Court.  (*See, e.g.*, *Blasingim* ECF No. 65-11; *Blasingim* ECF No. 82.)  Without getting into the weeds of the discovery battles, previously discussed at a high level, the contentious relationship between the parties and Liberty Steel's unwillingness and inability to provide basic

information in discovery resulted in Plaintiffs' motion for contempt and required the extraordinary step of appointing the Special Master for Liberty Steel ultimately to identify and produce the documents and information requested in 2019.  Even then, the record makes clear that the Special Master had difficulty getting straight answers from Liberty Steel to basic questions.  (*See Blasingim* ECF No. 166, PageID #4962.)

### II.B.   The Special Master's Recommendation

Under Rule 26(g)(3) and Rule 37(c), the Special Master recommends discovery sanctions for violations of Rule 26(e), Rule 26(g), and Rule 37 falling into four categories.  (*Blasingim* ECF No. 166, PageID #4960–61; *see also id.*, PageID #4964.) In addition, the Special Master recommends sanctions under 28 U.S.C. § 1927.  (*Id.*, PageID #4965.)  She agreed with Liberty Steel that no violation of a discovery order occurred in *Blasingim*, making sanctions under Rule 37(b) inappropriate.   (*Id.*, PageID #4964.)   Also, because the Special Master did not recommend sanctions against Liberty Steel under Rule 37(c)(1) for failing to include the information at issue in its initial disclosures under Rule 26(a)(1), the Court need not address Liberty Steel's objection to such a basis for the imposition of sanctions.  (*Blasingim* ECF No. 197, PageID #9967.)  Therefore, this objection is **MOOT**.

### II.B.1. Failure Reasonably to Inquire

Liberty Steel failed reasonably to inquire into the location, storage, and use of responsive records and data, including records and data collected by and remaining in the possession of prior counsel.  (*Blasingim* ECF No. 166, PageID #4960; *Blasingim* ECF No. 174, PageID #6304–08.)  In her recommendation, the Special Master reports that Liberty Steel "has at times been unable to 'articulate what it collected and when,'

including in response to direct questions in the Special Master proceedings about why certain information identified first by ARCIS and then by KLD had not previously been identified and producing in *Blasingim*, despite its responsiveness and relevance." (*Blasingim* ECF No. 166, PageID #4961.)

Further, despite having a common client and matter, she found that Liberty Steel's counsel acted as if it had no access to prior counsel, at least in some instances. (*Id.*, PageID #4961–62.) In this respect, the Special Master observed that many if not all of the discovery failures identified through the proceedings before her "could have been 'cured' with better coordination among counsel and their common client." (*Id.*, PageID #4962.) The Special Master found these failures, in particular the Grasso cell phone image, "frankly, perplexing and troubling." (*Id.*)

### II.B.2. ESI Protocols

Liberty Steel failed to apply two agreed protocols for searching and producing electronically stored information, resulting in the withholding of relevant information. (*Blasingim* ECF No. 166, PageID #4960; *Blasingim* ECF No. 174, PageID #6308–10.) According to the Special Master's Report and Recommendation, Liberty Steel admits that it did not initially search the forensic images of the cell phones of Mr. Campbell and Mr. Blasingim under the first ESI protocol. (*Blasingim* ECF No. 166, PageID #4962.) Then, when the search proceeded, it used the search terms from the original protocol for electronically stored information, not the terms specially negotiated for use with their phones. (*Id.*) She found that this failure resulted from Liberty Steel's decision to switch counsel. (*Id.*)

73

In response to Liberty Steel's effort to shift responsibility for this failure to Plaintiffs, the Special Master asked the parties which party must ensure that an ESI vendor properly applies a protocol and search terms.  (*Id.*, PageID #4962–63.)  To address this question, the parties relied on The Sedona Principles (*Blasingim* ECF No. 174, PageID #6306; *Blasingim* ECF No. 177, PageID #3262), which the Special Master also reviewed (*Blasingim* ECF No. 166, PageID #4963.  Because the parties independently retained the ESI vendor and dealt independently with it, the Special Master placed responsibility on the producing party (Liberty Steel in this case) both "to ensure that direction to the vendor is complete and accurate" and "to make sure that any production resulting from the vendor's work is also complete and accurate." (*Id.*)  Ruling otherwise, in the view of the Special Master, would allow a producing party to shift its discovery obligations to the requesting party or to a vendor.  (*Id.*)

In this regard, the Special Master found that Liberty Steel's discovery failures resulted in "significant confusion, required 'do-over' discovery, and kept a significant volume of responsive information from Plaintiffs."  (*Id.*, PageID #4963–64.)  Indeed, she noted that Mr. Blasingim's production of thousands of documents following application of the correct protocol on the eve of the deadline for her Report and Recommendation underscored the point.  (*Id.*, PageID #4964 n.12.)  She had no doubt that Liberty Steel did not fulfill its discovery obligations with respect to electronically stored information.  (*Id.*, PageID #4964.)  However, she did not "find Liberty's errors here to be malicious or willful."  (*Id.*)

### II.B.3. Grasso Cell Phone Image

Liberty Steel failed to locate the image of Grasso's cell phone and to preserve and produce data from the phone until the images were discovered in the Special Master proceedings.  (*Blasingim* ECF No. 166, PageID #4960; *Blasingim* ECF No. 174, PageID #6311–14.)  As noted in discussing the first category of discovery failures, the Special Master found that better coordination of Liberty Steel's counsel would likely have prevented the significant confusion over images from Grasso's cell phone and Liberty Steel's failure to produce responsive documents located on it until the Special Master proceedings.  (*Blasingim* ECF No. 166, PageID #4962.)

### II.B.4. Improper and Unnecessary Objections

Liberty Steel used improper and unnecessary objections, including its reliance on an overly restrictive view of relevance.  (*Blasingim* ECF No. 166, PageID #4960–61; *Blasingim* ECF No. 174, PageID #6314–16.)  The Special Master notes that Liberty Steel "has attempted to avoid discovery of various categories of documents in [*Blasingim*] as irrelevant."  (*Blasingim* ECF No. 166, PageID #4964.)  Yet production of some of these documents in *Blasingim* precipitated the filing of the motion for contempt.  (*Id.*)  Looking to a key question from the Judge in *McCracken* at the joint hearing in July 2021, the Special Master saw Liberty Steel's "view of relevance in responding to discovery in *Blasingim*" as "overly restrictive, hindering and delaying the production of documents that—although Liberty may contest their interpretation—are indisputably relevant."  (*Id.*)

75

## II.C.   The Court's Findings on Discovery Sanctions

At the outset, the Court notes, consistent with its prior Order clarifying the scope of the Appointing Order, that the discovery sanctions at issue involve only Liberty Steel—not Mr. Campbell or Mr. Blasingim.  Because all three Defendants have somewhat aligned interests overall, and largely the same goal in avoiding sanctions for and generally defending discovery conduct that was coordinated to a significant degree, the Court's analysis might appear to apply to each Defendant. However, the Court appreciates that the record might apply differently to the individual Defendants, particularly where it directed the Special Master to focus her attention on Liberty Steel in the first instance and where Mr. Blasingim and Mr. Campbell have not had a fair opportunity to litigate the question whether they should be subject to discovery sanctions—though, as the Court stated in its ruling clarifying the scope of the Special Master's assignment, any sanctions against Liberty Steel might inevitably have collateral consequences for Mr. Blasingim and Mr. Campbell.  (*Blasingim* ECF No. 145, PageID #2389.)  This feature of the Court's analysis and ruling has important substantive and procedural implications that will become clear in the discussion below and as the *Blasingim* case progresses.

Based on the Court's independent review of the record, and construing Liberty Steel's objections as subjecting the entirety of the Special Master's Report and Recommendation regarding discovery sanctions in *Blasingim* to de novo review, the Court finds that the record establishes by clear and convincing evidence that Liberty Steel committed at least the four discovery failures the Special Master found in her Report and Recommendation that warrant the imposition of sanctions under

Rule 26(g)(3) and Rule 37(c).  Further, the Court finds that these discovery failures are not justified—let alone substantially justified—and are not harmless. To the contrary, Liberty Steel's discovery failures prejudiced Plaintiffs.  Had Liberty Steel discharged its discovery obligations with ordinary care or timely disclosed the information that the Special Master proceedings uncovered, the Court and the parties would not have spent more than a year litigating collateral matters that have held up trial of this matter.  In fact, short of willful, intentional, or deliberate misconduct in discovery, the series of compounding discovery failures in this case presents just about the strongest and most serious case for an award of discovery sanctions conceivable.  If the record in this case does not support an award of discovery sanctions, it is difficult to see a case that would.

In so finding, the Court largely agrees with the factual and legal bases for the Special Master's recommendation, with one clarification which is consistent with the Special Master's Report and Recommendation.  Under the plain language of Rule 37(c)(1), sanctions depend on the failure of a *party*—not counsel—to supplement discovery responses.  Rule 37 distinguishes between a party and its counsel throughout.  Therefore, the choice of language in Rule 37(c)(1) is not accidental, and sanctions under Rule 37(c)(1) for failure to supplement result from a party's failures, not counsel's.  In this respect, the record shows that Liberty Steel, not its counsel, failed to supplement its discovery responses, and in particular the two responses set forth above.  In fact, Liberty Steel resisted supplementation until the appointment of a Special Master and even then located responsive documents that should have been

produced years earlier only through happenstance when KLD found previous related work.  With that clarification, the Court determines that the record support a finding of sanctions on each of the four grounds the Special Master recommends for the following reasons.

### II.C.1. Failure Reasonably to Inquire

The Court finds that Liberty Steel failed to take reasonable steps to identify and locate responsive and relevant data.  It certified in September 2019 that it made reasonable inquiry in responding to Plaintiffs' discovery requests.  (*See* ECF No. 174-2.)  But the record shows that its original efforts to purge materials subject to the Court's Order in *McCracken* were deficient, knowingly so at the time, and supported by false statements made under oath.  Plaintiffs' discovery requests in *Blasingim* called for production of these and other documents.

Moreover, as the Special Master notes, Liberty Steel was unable to "articulate what it collected and when," including in response to direct questions in the Special Master proceedings.  (*Blasingim* ECF No. 166, PageID #4961.)  Liberty Steel could not say why certain information that ARCIS and then KLD identified had not previously been identified and produced in *Blasingim*, despite its responsiveness and relevance.  (*Id.*)  Indeed, it took a tremendous amount of time for Liberty Steel to provide basic information to the Special Master, such as what instructions counsel provided to Epiq.  Further, she notes that, at least in some instances, counsel for Liberty Steel acted "as if it had no access" to prior counsel, despite their common client and matter.  (*Id.*, PageID #4962.)

Discovery obligations apply with equal force to electronically stored information.  Ultimately, Liberty Steel could employ as many different lawyers as it desired to handle *McCracken*, *Blasingim*, and any number of other matters, so long as those lawyers fulfill their obligation to learn the relevant facts, including about electronically stored information, custodians, and efforts to preserve, collect, and produce relevant and responsive information.  *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 927 (N.D. Ill. 2021).  In light of these obligations, the Court finds that Liberty Steel frustrated the efforts of its counsel to discharge their obligations.  Whether Liberty Steel changed counsel for financial considerations, strategic or personal preferences, or deliberate efforts, it had an obligation to cooperate with its counsel in these discovery efforts.

### II.C.2. ESI Protocols

Liberty Steel admits that "the forensic images of the Campbell and Blasingim cell phones and personal devices were not initially searched under the November 2019 ESI Protocol." (*Blasingim* ECF No. 166, PageID #4962; *Blasingim* ECF No. 177, PageID #6873; *Blasingim* ECF No. 156-22, ¶ 10, PageID #3578.)  When counsel first searched the cell phones of Mr. Campbell and Mr. Blasingim in this litigation, counsel for Liberty Steel provided Epiq with search terms from the initial ESI protocol from 2019 instead of the protocol negotiated in 2020.  (*Blasingim* ECF No. 166, PageID #4962; *Blasingim* ECF No. 177, PageID #6873; *Blasingim*, ECF No. 156-22, ¶ 10, PageID #3578.)  The Special Master found, and the Court agrees, that "Liberty's failure to fully apply the first protocol overlaps with the issues discussed immediately above, as the failure resulted from counsel's 'oversight' in not appreciating that prior

79

counsel had imaged the individual defendants' cell phones." (*Blasingim* ECF No. 166, PageID #4962.)

With respect to responsibility for a vendor's proper application of a protocol for the discovery of electronically stored information, the Court agrees with the Special Master that the producing party bears that responsibility.  Both parties looked to the Principles of the Sedona Conference, which recognize that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information."  The Sedona Principles, Third Edition:  Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. 1, 52 (2018).  This principle "is grounded in reason, common sense, procedural rules, and common law, and is premised on each party fulfilling its discovery obligations without direction from the court or opposing counsel."  *Id.* at 118.

As a result, "counsel must exercise some degree of oversight to ensure that their client's employees are acting competently, diligently and ethically in order to fulfill their responsibility to the Court."  *Brown v. Tellermate Holdings Ltd.*, No. 2:11-CV-1122, 2015 WL 4742686, at *7 (S.D. Ohio Aug. 11, 2015) (quoting *Bratka v. Anheuser–Busch Co.*, 164 F.R.D. 448, 461 (S.D. Ohio 1995)).  And "counsel cannot just lay the blame on an ESI vendor."  *DR Distribs.*, 513 F. Supp. 3d at 883.  But parties have obligations in this process too.  They must "provide accurate information to their counsel and opposing parties."  *Brown*, 2015 WL 4742686, at *7.

Here, the parties dealt independently with Epiq, the ESI vendor—a fact which underscores the principles outlined above.  The producing party has the responsibility to ensure that its directions to the vendor are complete and accurate.  Ultimately, the producing party must certify its responses and production under Rule 26(g).  A producing party cannot shift its responsibilities to an opposing party or to the vendor. The Court finds that Liberty Steel's failure effectively to coordinate with its ESI vendor to ensure application of the correct search terms created significant confusion, required "do-over" discovery, and kept a significant volume of responsive information from Plaintiffs.  This record shows that Liberty Steel failed to fulfill its discovery obligations with respect to the protocols for discovery of electronically stored information.

### II.C.3. Grasso Cell Phone Image

Liberty Steel concedes that it failed to locate or produce the image of Grasso's cell phone.  (*Blasingim* ECF No. 177, PageID 6873–74.)  The saga of Grasso's cell phone provides a particularized application of the general principles regarding discovery of electronically stored information.  Also, it shows that Liberty Steel bears ultimate responsibility for the coordination of its multiple counsel across different cases.  In short, without KLD's fortuitous discovery that it previously worked for Liberty Steel and had an image of Grasso's phone, no one in this litigation would have learned that fact.

In short, as the Special Master found, "'many, if not all of, the discovery failures' identified through what became a tedious supplemental process could have been 'cured' with better coordination among counsel and their common client,

including location of the Grasso cell phone image and the responsive records contained on it." (*Blasingim* ECF No. 166, PageID #4962.)  These discovery failures left the Special Master concerned for the integrity of discovery in this case: "The fact that this was not done until required through the Special Master process was, frankly, perplexing and troubling—and emblematic of the attorney turnover issues discussed above." (*Id.*)  The Court shares this concern and finds the discovery failures at issue beyond troubling.  They warrant sanctions.

### II.C.4. Improper and Unnecessary Objections

Liberty Steel responded to discovery with an overly restrictive view of relevance that finds no support in the Rules or in practice.  Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Relevance simply means that a fact is of consequence to determining the action or has any tendency to make a fact more or less probable.  Fed. R. Evid. 401.  Even without assuming that Liberty Steel's recruitment of and relationships with Mr. Campbell and Mr. Blasingim were part of a southern strategy or had anything to do with Mr. McCracken, information relating to what would be two separate and discrete episodes in that view would still be relevant under the broad definition underlying the discovery rules.  Indeed, as the Special Master noted, Liberty Steel's conduct in responding to discovery is inconsistent with its litigating position that these matters are not relevant. (*Blasingim* ECF No. 166, PageID #4964.)  This is so because Liberty Steel actually produced some of these documents in *Blasingim*, precipitating the motion for contempt in *McCracken* after it took the position that that case provided

the exclusive vehicle for resolving questions about its production.  (*Id.*)  Nonetheless, Liberty Steel sought to frustrate discovery of various categories of documents in *Blasingim* as irrelevant, including documents constituting Monarch's protected property and information in *McCracken*.

By clear and convincing evidence, the record establishes that Liberty Steel operated with an overly restrictive view of relevance, which it also inconsistently and selectively applied, resulting in the multiplication of discovery disputes and hindering the production of documents and other information.  Although Liberty Steel disputes the interpretation of this evidence, and it has the right to do so, these materials are unquestionably relevant, and Plaintiffs requested their production.

*      *      *

Liberty Steel's discovery failures, including its failure to supplement as required, undermined the discovery process in *Blasingim*, necessitating the Special Master's involvement.  Nothing about the fact that these failures largely, but not exclusively, involved discovery of electronically stored information changes that determination.  Rule 26(g) obligates lawyers and their clients to make representations only after reasonable inquiry, including with respect to discovery of electronically stored information.  Likewise, parties have a continuing duty to supplement their disclosures and responses pursuant to Rule 26(e).

This record shows multiple discovery failures spread across several matters, counsel, and years, but one common client.  To be sure, there is plenty of blame to go around.  Different counsel in the various cases overlooked something or took an action that had consequences in another case or in later productions or discovery disputes.

Any one of these shortcomings individually, while not helpful or acceptable, would not likely have resulted in the sort of rancor that characterized this litigation and led to the need for the Special Master.  Ultimately, the one commonality across each of the cascading discovery failures that resulted in these proceedings and the Court's finding that the record in *Blasingim* warrants discovery sanctions is Liberty Steel itself.  Nothing in the record suggests that counsel, as opposed to their client, bears responsibility that would excuse their client from the consequences of discovery sanctions or that rises to the level of joint liability.  In short, on this record, the buck stops with the party.

### II.D.  Liberty Steel's Objections and Arguments

In a famous speech about oral advocacy based on his experience as Solicitor General of the United States, Justice Robert Jackson advised appellate advocates to limit the number of errors raised so as not to weaken the merits of meritorious issues:

> One of the first tests of a discriminating advocate is to select the question, or questions, that he will present orally.  Legal contentions, like the currency, depreciate through over-issue.  The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error.  But receptiveness declines as the number of assigned errors increases.  Multiplicity hints at lack of confidence in any one.  Of course, I have not forgotten the reluctance with which a lawyer abandons even the weakest point lest it prove alluring to the same kind of judge.  But experience on the bench convinces me that multiplying assignments of error will dilute and weaken a good case and will not save a bad one.

Robert H. Jackson, *Advocacy Before the United States Supreme Court*, 37 Cornell L. Rev. 1, 5 (1951).  Although he spoke about oral advocacy on appeal at the highest levels of the profession, Justice Jackson's advice embodies an important lesson for all advocates, including those in a district court.  Where a party raises too many

84

arguments or interposes too many objections, a court divines that none has much merit.  Such is the case here.

In a series of objections, briefs, and supporting appendices and other materials totaling hundreds of pages responding to the Special Master's Report and Recommendation, Liberty Steel raises more than ten objections and other issues. While the Special Master might well have erred, and the Court reviewed the record de novo under the standard of review with an open mind, the sheer number of objections Liberty Steel raises undermines the merit any one of them might have. Given the gravity of this matter, the Court endeavors to address each on its own terms.  In doing so, the Court attempts to group those objections not already addressed thus far in this ruling into the following helpful categories.

### II.D.1. Procedural Objection

Liberty Steel begins with a procedural objection that Plaintiffs did not move for discovery sanctions in *Blasingim*. (*Blasingim* ECF No. 197, PageID #9947–48; *see also id.*, PageID #9968–72.) This objection suffers from three fatal flaws. First, Rule 26 authorizes a court to sanction a lawyer, a party, or both "on motion *or on its own*." Fed. R. Civ. P. 26(g)(3) (emphasis added). Similarly, a court may award the sanctions available under Rule 37(c)(1) "in addition to or instead of" exclusion of information or witnesses not timely disclosed "on motion and after giving an opportunity to be heard." That Rule does not preclude sanctions on a court's own motion so long as the party receives due process.

Second, as discussed, when Plaintiffs moved for contempt, Liberty Steel asserted that *McCracken* provided the exclusive case in which to address the

production of documents relating to Mr. Blasingim.  (*Blasingim* ECF No. 166-3, PageID #4975.)  In light of that position, Liberty Steel cannot be heard to complain now that its contempt in *McCracken* might have consequences in *Blasingim* too.

Third, on September 7, 2021, the Court provided notice that the Special Master proceedings would involve a Report and Recommendation regarding whether discovery sanctions are appropriate in *Blasingim*.  It did so when it docketed a draft of the appointing order during the selection process that included among her duties and responsibilities:  "the Special Master's report and recommendation should address whether discovery sanctions in Blasingim are appropriate and, if so, which sanction(s)." (*Blasingim* ECF No. 120-1, PageID #2054.)  In the month following this notice, no party objected or raised a concern about this assignment.  That language remained unchanged in the final appointing order.  (*See Blasingim* ECF No. 122, PageID #2066.)

This record demonstrates that Liberty Steel received notice that the Special Master's authority included preparing a Report and Recommendation about the propriety of discovery sanctions in *Blasingim*, including which (if any) sanctions might be appropriate.  Further, Liberty Steel has had ample opportunity to be heard, including through the submission of thousands of pages of briefing and record materials, regular conferences with and submissions to the Special Master, and oral argument on her Report and Recommendation.  Accordingly, the Court finds that Liberty Steel has forfeited this objection and, if it has not, **OVERRULES** the procedural objection Liberty Steel raises.

### II.D.2. Improper Discovery Request

Although Liberty Steel did not object to Request for Production No. 8, it objects to the Special Master's Report and Recommendation on the ground that Plaintiffs' request is facially improper, making an objection unnecessary.  (*Blasingim* ECF No. 197, PageID #9950.)

### II.D.2.a. Liberty Steel's Discovery Obligations

Somehow, Liberty Steel objects with a straight face that this request "could not and did not create any broad obligation to search for ESI."  (*Id.*, PageID #9951.) Liberty Steel does not and cannot premise this argument on Rule 26 itself.  The Rule specifically provides that discovery ordinarily extends to electronically stored information unless the producing party can show undue burden or cost.  Fed. R. Civ. P. 26(b)(2)(B).  During the Special Master proceedings and in this litigation more broadly, Liberty Steel has not even tried to make such a showing.  Also, Liberty Steel recognizes that discovery requests extend to electronically stored information when it cites Local Rule Appendix K and the Sedona Conference Principles.  (*Blasingim* ECF No. 197, PageID #9963.)

Instead, Liberty Steel basis its argument on the procedure governing requests for production in Rule 34.  It provides that a request "must describe with reasonable particularity each item or category of items to be inspected."  Fed. R. Civ. P. 34(b)(1)(A).  This requirement puts the producing party on notice of the documents for which it must search.  *Hager v. Graham*, 267 F.R.D. 486, 493 (N.D. W. Va. 2010). As Liberty Steel notes, where a request has reasonable particularity, it does not require the producing party "to ponder and to speculate in order to decide what is and

what is not responsive." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 575 (N.D. Tex. 2018) (quoting *Bruggeman ex rel. Bruggeman v. Blagojevich*, 219 F.R.D. 430, 436 (N.D. Ill. 2004)).  Request for Production No. 8 does that.  It asks Liberty Steel to produce materials in its possession, custody, or control that relate to American Consolidated or Monarch Steel in certain designated areas in which the companies compete.  In short, the request provided reasonable (though not perfect) notice to Liberty Steel of what Plaintiffs sought.  If Liberty Steel had any question, there are informal and formal processes available to obtain clarification.

Or Liberty Steel could have objected.  It did not.  To excuse its failure to object, Liberty Steel relies on several authorities.  But nothing in the text of the Rule authorizes the *ex post* self-help to which Liberty Steel belatedly resorts to shift blame elsewhere for its own discovery failures.  To the contrary, Rule 34 directs the producing party to respond to each request and make particularized objections, among other things.  Fed. R. Civ. P. 34(b)(2)(B) & (C).  Further, the Court finds the authorities on which Liberty Steel relies unconvincing.  In *Securities & Exchange Commission v. Mazzo*, No. SACV 12-1327, 2013 WL 12172628, at *20 (C.D. Cal. Oct. 24, 2013), the magistrate judge sustained an objection to a boilerplate contention request for production it found improper.  Notably, the court did not say that such a request excused the need to object.  Similarly, in *Lopez*, the magistrate judge opined on the impropriety of detailed contention interrogatories, but did not excuse the sort of argument or conduct at issue here.  *Lopez*, 327 F.R.D. at 575–78.  Serving an

abusive request, if Plaintiffs' request is one, does not invite an abusive (or sanctionable) response. Two discovery wrongs do not make a right.

Plaintiffs' remaining authorities involve materially different discovery requests that fail to show that Request for Production No. 8 is improper or that excuse Liberty Steel's failure to object. *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 616–17 (C.D. Cal. 2013), addressed requests sufficient to show certain financial information. None of the requests included the product-line data at issue there. In contrast, Request for Production No. 8 put Liberty Steel on notice of what Plaintiffs sought. In *In re Asbestos Products Liability Litigation*, 256 F.R.D. 151, 157 (E.D. Pa. 2009), the defendants served a facially overbroad request for production seeking all radiology reports and all files for *any* patient the plaintiffs' physicians had seen. This request went far beyond the patients who filed the claims at issue in that litigation and, unlike Liberty Steel the defendants presented argument as to why producing documents responsive to that request was unduly burdensome. It has little, if any, support to offer Liberty Steel in the very different facts and circumstances at issue in these proceedings.

### II.D.2.b. Efforts to Shift Responsibility

Throughout its objections to the Report and Recommendation, Liberty Steel points fingers at nearly everyone else to shift blame for its deficient and sanctionable handling of discovery. Naturally, it starts with Plaintiffs. Liberty Steel argues that Plaintiffs only advanced the position that Request for Production No. 8 called for production of *McCracken* documents and information in moving for contempt and in the Special Master proceedings. (*Blasingim* ECF No. 197, PageID #9949–50.) Fair

enough.  That contention is true as far as it goes.  But the record shows that Plaintiffs persistently and aggressively sought discovery of information regarding their proprietary information in Liberty Steel's possession and what they claim are Plaintiffs' trade secrets.  Additionally, the record shows that Liberty Steel did not demand a more specific discovery request, instead agreeing to investigate, follow up, and respond—ultimately, as part of a strategy to put off any questions until after the deadline in a sort of scheduling Ponzi scheme.

Next, Liberty Steel implies that the Special Master recommends sanctions based on her misunderstanding that the information located in the Special Master proceedings was not actually Monarch's protected property and information.  (*Id.*, PageID #9951.)  This passive-aggressive position misses the point.  Regardless of whether these materials are trade secrets or fall within the definition of Monarch's protected property and information in the Court's Order in *McCracken*, they respond to Request for Production No. 8.  Accordingly, Request for Production No. 8 is not too "amorphous" to put Liberty Steel on notice to search for documents and information subject to the Court's Order in *McCracken* that remained in its possession.  (*Id.*, PageID #9968.)

To try to call into question the Special Master's reliance on this request in her Report and Recommendation, Liberty Steel points to an email from the Special Master to counsel in March 2022.  (*Id.*, PageID #9949; *Blasingim* ECF No. 156-40, PageID #3807.)  At the time, KLD had recently discovered its potential conflict and the image of the Grasso cell phone in its possession.  As the Special Master assessed

90

how to proceed, she asked Liberty Steel for an answer to a question from Plaintiffs, who wanted to know whether Liberty Steel "engage[d] in any other search to determine if it continued to possess Plaintiffs' information precluded by the McCracken agreement." (*Blasingim* ECF No. 156-40, PageID #3807.)  In response to Plaintiffs' question, the Special Master advised how she wanted to proceed under the circumstances:

> I am not inclined at present to require an affidavit on this question. While I appreciate Plaintiffs' position that information subject to the McCracken Agreement would be responsive to RFP No. 8 and other requests had such information been located in the course of discovery, until that information was discovered in what appears to be May 2021, I don't see that any request would have prompted Liberty to look for this information so specifically in the context of *Blasingim*.  That said, I would like to revisit on Tuesday whether some aspect of the 2021 ARCIS search is subject to disclosure via affidavit, specifically what prompted the discovery of McCracken information on Liberty's systems in May 2021.  Please be prepared to discuss.

(*Id.*)  Liberty Steel strips a portion of this response from its context to make it sound as if the Special Master determined that Request for Production No. 8 does not call for the production of Monarch's protected property and information in *Blasingim*. She did no such thing.

This response from the Special Master involves case management matters, not a final report or recommendation.  It comes in the context of an incomplete record— indeed, a significant development given the new information KLD brought to the table.  Even if this sound bite means what Liberty Steel says, and it does not, the Special Master was entitled to change her mind with the benefit of a complete record and briefing from the parties.

In context (in a portion of her email that Liberty Steel did not quote), the Special Master declined to require an affidavit from Liberty Steel attesting to its efforts to locate documents and information it might have retained in violation of the Court's Order in *McCracken*. (*Id.*) In making this decision, contrary to what Liberty Steel says in its objections (*Blasingim* ECF No. 197, PageID #9949), the Special Master took no position on whether Monarch's protected property and information was responsive. To the contrary, agreeing with Plaintiffs, she *implied* that it was. She merely emphasized that the request might not prompt Liberty Steel to search "so specifically" for the information at issue when it was relying on its efforts, as flawed and deficient as they were, to implement the *McCracken* Order and settlement. In other words, relying on such efforts, the Special Master had the practical recognition that Liberty Steel would not have undertaken any further specific steps in response to Request for Production No. 8 that it did not believe it had already taken, making the step of requiring an affidavit on the issue unnecessary.

*     *     *

At bottom, Liberty Steel's arguments betray a fundamental blindness to the fact that it has failed in its basic discovery obligations, which form the foundation for the resolution of disputes in our civil justice system. The Court **OVERRULES** Liberty Steel's objections that Plaintiffs' discovery requests did not call for production of the information at issue.

### II.D.3. Relevance as a Ground for Withholding Production

Liberty Steel represents that "[a]ny new documents relevant to *Blasingim* that were discovered through the Special Master proceeding, primarily text messages,

92

were not withheld on relevancy grounds." (*Blasingim* ECF No. 197, PageID #9953.) Liberty Steel objects that the Special Master found that its "overly restrictive interpretation of relevance, including as between the *McCracken* and *Blasingim* cases," "created unfair and unnecessary roadblocks" to discovery. (*Id.*, PageID #9955 (quoting *Blasingim* ECF No. 166, PageID #4965).)

### II.D.3.a. Plaintiffs' Discovery Requests

Regarding *McCracken* documents, Liberty Steel bases its objection on its position that Plaintiffs "never served [it] with any specific discovery request for McCracken information in *Blasingim*"—not relevance. (*Id.*, PageID #9952.)  This argument proves the point.  As discussed above, Plaintiffs' Request for Production No. 8 *does* seek *McCracken* information.  It expressly requests "[a]ll documents and data . . . that relate to American Consolidated Industries, Inc. or any of its subsidiaries, including, but not limited to Monarch Steel . . . or Monarch's operations, products, customers, suppliers, wholesalers, business contacts, plans, strategies, employees, pricing or support services." (*Blasingim* ECF No. 174-2, PageID #6343.) Plainly, this request encompasses such information.

Rule 34 requires only "reasonable particularity" a when requesting an item or category of items for inspection.  Fed. R. Civ. P. 34(b)(1)(A).  It does not require or authorize the degree of precision on which Liberty Steel insists.  To the contrary, the discovery rules require opposing parties and their counsel to cooperate in good faith and avoid the gamesmanship that Liberty Steel's interpretation of this particular request, and its broader discovery conduct, creates.

93

Although it no longer denies that it failed to produce relevant information, Liberty Steel repeatedly contests the Special Master's finding that it withheld responsive documents and information on relevancy grounds.  (*See Blasingim* ECF No. 197, PageID #9954 & #9955.)   In doing so, Plaintiffs challenge the Special Master's reliance on an appendix Plaintiffs submitted.  (*Id.*, PageID #9955.)  Even as Liberty Steel argues the inaccuracy of the appendix, it concedes that it failed to produce sixty-six of the eight-six documents listed in the appendix before the Special Master proceedings.  (*Id.*, PageID #9956.)  Whatever the basis or explanation for Liberty Steel's failure to produce these documents during the schedule for discovery the Court set, the Special Master proceedings identified this discovery failure, which Liberty Steel confirms.  It merely contests the characterization that it withheld these documents on relevance grounds, pointing out instead that its mishandling of the Grasso cell phone accounts for some, misapplying search terms in connection with the second ESI protocol accounts for others, and conducting new searches not previously performed identified still others.  (*Blasingim* ECF No. 197-1.)  What a mess.

Contrary to Liberty Steel's characterization of the failure to produce these documents as an "oversight," the Court finds that Liberty Steel failed to produce them through a series of discovery failures and that those failures warrant sanctions. Frankly, what matters for purposes of the Court's ruling and its finding that this record warrants discovery sanctions is not so much the particular ground Liberty Steel advances to try to justify its failure to produce information—whether relevance

94

or the claimed lack of particularity in the request—but Liberty Steel's series of inexplicable discovery failures that prejudiced Plaintiffs and undermined these proceedings.

### II.D.3.b. Liberty Steel's State of Mind

Though Liberty Steel now admits these discovery failures, it contends they were "inadvertent and unintentional." (*Blasingim* ECF No. 197, PageID #9953–54.) In this respect, the Court agrees with the Special Master that Liberty Steel and its counsel did not act maliciously or willfully. (*Blasingim* ECF No. 166, PageID #4964.) But Rule 26(g) and Rule 37(c) do not require such a state of mind before a court may impose sanctions.

Although Liberty Steel did not act maliciously or intentionally, it also did not act benevolently or voluntarily, as it now tries to portray itself. In this regard, Liberty Steel attempts to rewrite history. It contends that it "voluntarily asked its IT vendor, ARCIS, to conduct a search for McCracken information at the end of discovery in *Blasingim*." (*Blasingim* ECF No. 197, PageID #9953.) Please. At that point in time, Liberty Steel took the position that, because of the Court's Order in *McCracken*, Plaintiffs could only obtain *McCracken* information in that case. Faced with a threatened motion for contempt, which it precipitated, Liberty Steel can hardly claim to have "voluntarily" conducted another search for information. Moreover, its mismanagement of the discovery process with respect to at least the image of Grasso's cell phone and the cell phones of Mr. Campbell and Mr. Blasingim guaranteed that another search would not locate a large volume of relevant and responsive information.

### II.D.3.c. Additional Arguments

Liberty Steel makes two last arguments regarding its relevance objection that require a brief response.  First, it attacks the Special Master's Report and Recommendation through a series of straw-man arguments.  For example, it professes surprise or confusion that "the Special Master concluded that Liberty had somehow violated its discovery obligations in *Blasingim* with respect to 'information identified first by ARCIS and then by KLD [that] had not previously been identified and produced in *Blasingim*, despite its responsiveness and relevance.'"  (*Id.*, PageID #9953 (quoting *Blasingim* ECF No. 166, PageID #4961).)  This argument rests on the false premise that Plaintiffs did not request the information at issue.  Liberty Steel knows better.

Second, at other times, Liberty Steel attempts to eat its cake and have it too.  The Special Master noted the inconsistency of Liberty Steel resisting discovery of *McCracken* documents after producing some in *Blasingim*.  (*Blasingim* ECF No. 166, PageID #4964.)  In response, Liberty Steel argues that its production of these documents and information in *Blasingim* show that it did not operate with an overly restrictive view of relevance.  (*Blasingim* ECF No. 197, PageID #9953.)  What it shows, the Court finds, is that Liberty Steel sought to avoid complying with its discovery obligations for as long as it plausibly could—and then some.  Liberty Steel cannot simultaneously claim to produce *some* documents, but not others on the same topic, and maintain with a straight face that it has sought to comply with its discovery obligations in anything resembling good faith.

\*    \*    \*

Because the record supports the Special Master's Report and Recommendation, the Court **OVERRULES** Liberty Steel's objections based on relevance.  In any event, the Court imposes sanctions on Liberty Steel based on the totality of its discovery misconduct reflected in the record, not merely on its cribbed and technical parsing of Plaintiffs' requests and what documents and information might be relevant or responsive.

### II.D.4. Efforts to Resolve Short of Litigation

As part of the efforts it makes throughout its objections to the Special Master's Report and Recommendation to try to shift the blame for its discovery failures to Plaintiffs, Liberty Steel objects that Plaintiffs did not raise a violation of any discovery obligation in *Blasingim* relating to the discovery of information relating to Mr. McCracken.  (*Blasingim* ECF No. 197, PageID #9947.)

### II.D.4.a. Close of Discovery

By November 30, 2020, Liberty Steel says that Plaintiffs had information that it was in possession of materials in violation of the Court's Order in *McCracken*.  (*Id.*)  On that date, at the deposition of a corporate representative of Liberty Steel, Plaintiffs' counsel asked opposing counsel "whether or not you want us to file for contempt in this case or you want us to move in the other case for contempt."  (*Blasingim* ECF No. 156-15, PageID #3480.)  He represented that he had evidence that Liberty Steel used the *McCracken* information.   (*Id.*, PageID #3481.)  Nonetheless, Plaintiffs did not raise the matter as a discovery dispute at a time when the Magistrate Judge ruled on a pending motion to compel and the Court dealt with

other discovery matters.  (*See, e.g.*, *Blasingim* ECF No. 85; *Blasingim* Minute Order, Apr. 14, 2021; *Blasingim* Minute Order, May 4, 2021; *Blasingim* Minute Order, May 11, 2021.)

This record means less than Liberty Steel contends.  (*Blasingim* ECF No. 197, PagID #9948.)  To the extent Liberty Steel uses it to maintain that Plaintiffs never moved for discovery sanctions in *Blasingim* (*id.*), the Court already addressed that objection and overruled it.  Moreover, the record shows that, notwithstanding the discovery deadline of May 10, 2021 (*Blasingim* Minute Order, Apr. 14, 2021), the Court continued to address discovery issues between the parties after that date (*see Blasingim* Minute Order, May 11, 2021), the deadline for expert discovery was set for July 14, 2021 (*Blasingim* Minute Order, May 18, 2021), parties often continue discovery after the deadline, albeit with little if any judicial oversight or involvement, and on May 21, 2021 counsel jointly provided an update to the Court indicating that they were continuing their efforts to conclude the remaining discovery matters, including those involving the issues raised in these proceedings (*Blasingim* ECF No. 106, PageID #1791–92).  On this record, Plaintiffs' motion for contempt, filed on July 19, 2022, (*Blasingim* ECF No. 109), does not come too late.  Certainly, Plaintiffs could have brought the motion sooner.  But the Court does not fault them for making reasonable efforts to run down outstanding discovery issues, particularly because Liberty Steel itself continued to follow up and kick the can down the road—ultimately requiring the dedicated supervision of the Special Master to conclude these efforts.

## II.D.4.b. ARCIS Search

Shortly before the close of discovery on May 10, 2021, in preparation for deposition, Liberty Steel's chief financial officer Jason Mericle "was made aware that [Plaintiffs' counsel] was claiming that Liberty's document production in *Blasingim* contained documents that it alleged violated the settlement agreement" in *McCracken*. (*Blasingim* ECF No. 156-33, ¶ 3, PageID #3627.) That allegation prompted Mericle to ask Liberty Steel's outside IT provider, ARCIS, to search for documents related to "McCracken." (*Id.*, ¶ 4.) Contrary to Liberty Steel's claim (*Blasingim* ECF No. 197, PageID #9949), these facts do not show that the company conducted this search voluntarily. At best, they show that Liberty Steel undertook these efforts to try to avoid what these proceedings have become. Even then, Liberty Steel only asked ARCIS to conduct this search after Plaintiffs raised the question of compliance with the Court's Order in *McCracken*. And the record from that point on shows an effort on the part of Liberty Steel to keep the issue from the Court by delaying and agreeing to cooperate while actually doing as little as possible.

Plaintiffs claim that Liberty Steel knew by the time of the deposition that "additional responsive documents remained outstanding." (*Blasingim* ECF No. 113-1, PageID #1820–21.) In its objections, Liberty Steel asserts that this claim "lacks any evidentiary support." (*Blasingim* ECF No. 197, PageID #9947.) The record demonstrates that Liberty Steel's representation is false. In an affidavit Mericle attests that he learned, before the deposition, that ARCIS identified some materials containing the term "McCracken." (*Blasingim* ECF No. 156-33, ¶ 6, PageID #3627.) At deposition, Mericle testified that ARCIS "found a few documents that remained,

and they are deleting them." (*Blasingim* ECF No. 156-44, PageID #3930–31.)  In response to a follow-up question, he confirmed that Liberty Steel possessed information that should have been deleted in compliance with the Court's Order in *McCracken*:

> Q.    So last week you learned that information that was supposed to be destroyed relative to Mr. McCracken remained in Liberty's systems; is that correct?
>
> A.    Correct.

(*Id.*, PageID #3931.)  At that point in time, Mericle knew only that these materials consisted of some emails.  (*Id.*, PageID #3932–33; *Blasingim* ECF No. 156-33, ¶¶ 6 & 7, PageID #3627–28.)  Plaintiffs' counsel asked whether Mericle knew one way or the other whether Monarch's protected property and information appeared in Liberty Steel's spreadsheets, customer lists, or prospect lists.  (*Blasingim* ECF No. 156-44, PageID #3934.)  He testified that he did not.  (*Id.*)  In the face of this record, Liberty Steel contends that it did know by the time of the Mericle deposition that it had additional outstanding documents.

Relatedly, Liberty Steel objects that the Special Master based her recommendation that sanctions are appropriate in part on a finding that "Liberty has at times been unable to 'articulate what it collected and when,' including in response to direct questions in the Special Master proceedings about why certain information identified first by ARCIS and then by KLD had not previously been identified and producing in *Blasingim*, despite its responsiveness and relevance."  (*Blasingim* ECF No. 197, PageID #9962–63 (quoting *Blasingim* ECF No. 166, PageID #4961).)  Its

argument either misunderstands or misinterprets the Special Master's Report and Recommendation.  Liberty Steel states that it "provided that information through affidavits explaining the ARCIS search."  (*Blasingim* ECF No. 197, PageID #9963.)  Those affidavits explain what Liberty Steel did *after* Plaintiffs first informally suggested the possibility of contempt.  But what the Special Master cites as sanctionable is having responses to discovery so deficient that Liberty Steel learned for the first time in 2022, after considerable effort from Plaintiffs and the Court's involvement, that it possessed documents and information it previously stated under oath it had purged to comply with the Court's Order in *McCracken*.

### II.D.4c. Plaintiffs' Efforts to Raise the Issue

Asserting another procedural objection, Liberty Steel argues that Plaintiffs failed to raise the issues regarding its failure to produce *McCracken* information in the *Blasingim* case until after the close of discovery.  (*Blasingim* ECF No. 197, PageID #9953.)  At the same time, Liberty Steel admits that it provided emails relating to *McCracken* after the close of discovery in *Blasingim*.  (*Id.*)

Notwithstanding the inconsistency of its position, Liberty Steel contends that, through discovery in *Blasingim*, "Plaintiffs were well aware that Jon Campbell and Chad Blasingim . . . were communicating with Liberty while they were still employed by Plaintiffs."  (*Id.*, PageID #9954.)  If so, Liberty Steel's refusal to produce this information in *Blasingim* is particularly troubling and approaches deliberate defiance of its discovery obligations.

### II.D.4.d. Procedural Requisites

Liberty Steel objects that Plaintiffs' failure to file a motion to compel bars sanctions under Rule 37.  (*Blasingim* ECF No. 197, PageID #9969.)  But Rule 37(a) does not operate as a prerequisite to seeking sanctions under Rule 37(c).  Rule 37(a) addresses a party's options for compelling disclosures.  To be sure, if a party obtains a court order compelling a disclosure that the producing or responding party fails to make, then Rule 37(b) authorizes sanctions for the failure to comply with the order.  But Rule 37(c) does not tie the sanctions available under it to a prior order.  Liberty Steel cites no authority supporting its contention to the contrary.

To the extent that argument has any merit, and it has none, the record shows that even an order from the Court on a motion to compel would have been futile.  In fact, Liberty Steel continues to take positions suggesting it still fails to understand its discovery obligations and the scope or gravity of the problems its failures created.  For all these reasons, the Court **OVERRULES** these objections Liberty Steel raises.

### II.D.4.e. Grounds for Sanctions

Liberty Steel objections that Rule 26(e) and Rule 37(c) do not provide a basis for discovery sanctions.  On both counts, it is wrong.  As explained above, Liberty Steel's response to Interrogatory No. 1 directly placed at issue Grasso's cell phone data, and Request for Production No. 8 without objection called for production of certain competitive information of Plaintiffs in the possession of Liberty Steel.  Therefore, Liberty Steel had the obligation under Rule 26(e) to supplement at least the responses to these discovery requests.  Liberty Steel's failure to fulfill this obligation provides a proper basis for sanctions under Rule 37(c)(1).  Even if these

102

documents "are not particularly material" (*Blasingim* ECF No. 197, PageID #9968), the question is their relevance and responsiveness to these requests, not their materiality or probative value. Nor are sanctions limited to circumstances involving intentional misconduct, as Liberty Steel suggests without citing any support. (*Id.*) Accordingly, the Court **OVERRULES** Liberty Steel's objection to the Special Master's recommendation for sanctions on these grounds. (*Blasingim* ECF No. 197, PageID #9967–68.)

### II.D.5. Miscellaneous Objections

Finally, Liberty Steel asserts a handful of additional objections not already addressed directly that do not fall neatly into the categories discussed.

### II.D.5.a. Remarks at the Joint Hearing

Liberty Steel questions the Special Master's reference to the joint hearing conducted on July 29, 2021 in *McCracken* and *Blasingim* before consolidation of the cases to address Plaintiffs' motion for contempt and the related issue of discovery sanctions. (*Blasingim* ECF No. 197, PageID #9954.) There, the Judge in *McCracken* asked about the responsiveness of documents relating to Mr. McCracken in the *Blasingim* case, to which counsel for Liberty Steel responded that "they're apples and oranges. We don't see how McCracken comes into this case." (*Blasingim* ECF No. 135, PageID #2199.)

Setting aside the fact that Liberty Steel asks not to be held to a position it took on the record in response to a direct question from a federal judge, a position it largely continues to defend, the Court **OVERRULES** this objection for two reasons. First, the Court does not give much weight at all to the positions any party took at the joint

hearing.  Of far greater consequence to the Court is the totality of the record of discovery failures as developed through the Special Master proceedings, the continuing lack of awareness on the part of Liberty Steel that it violated the fundamental rules of discovery that ensure the fairness of civil litigation, and Liberty Steel's lack of any contrition.  Second, the Special Master was entitled to consider the positions the parties placed on the record at that hearing.

## II.D.5.b. ESI Protocol and Reasonable Inquiry

Even as it defends its discovery failures in *Blasingim* by arguing that it had no reason to look for materials from *McCracken* it believed it had purged, Liberty Steel ascribes significance to the omission of the term "McCracken" from the initial ESI protocol in 2019. (*Blasingim* ECF No. 197, PageID #9950; *Blasingim* ECF No. 174-4.) Liberty Steel cannot have it both ways.  It had provided Plaintiffs with sworn statements, which were false as it turns out, making the use of the term unnecessary and irrelevant.  Then, Liberty Steel uses its own contempt and deficiencies in responding to discovery as a sword against Plaintiffs.  That takes chutzpah.  In any event, numerous search terms on the protocol would have turned up information showing that Liberty Steel had not complied with its obligations under the Court's Order in *McCracken* (*Blasingim* ECF No. 174-4, PageID #6375–77), if only it had made reasonable efforts to comply with its discovery obligations.

## II.D.5.c. Grasso and His Cell Phone

At his deposition, Grasso testified that he believed his cell phone was imaged sometime during these proceedings, but could not recall specifics. (*Blasingim* ECF No. 156-2, PageID #3286–87.)  Later, at the prompting of Liberty Steel's counsel,

Grasso clarified that he was not sure whether his phone was imaged.  (*Id.*, PageID #3308.)  Based on this record, Liberty Steel argues that none of the lawyers involved in *Blasingim* had any reason to do anything further on the issue.  (*Blasingim* ECF No. 197, PageID #9959.)  Not so.  Liberty Steel's counsel had every reason to make follow-up inquiries.  After hearing the company's former chief executive officer testify that he thought, but was not sure, his cell phone was imaged in connection with this litigation, counsel should have made some effort after the deposition to determine whether that happened or not.  Perhaps counsel did.  But the record does not reflect any such effort, and Liberty Steel argues that it had no obligation to do so based on Grasso's testimony.  In that regard, it again fails to appreciate its discovery obligations.

Even worse, Liberty Steel maintains that Grasso "was the person in the best position to know if his phone was imaged."  (*Id.*)  That claim is so far beyond the pale that the Court struggles to formulate a cogent response that a party who so poorly understands discovery, is so deeply in denial about its misconduct, and is so invested in finding anyone else to blame might appreciate.  Here is the Court's best effort: Grasso is not a lawyer, and the company did not charge him with responsibility for legal matters generally or handling litigation in particular.  For those tasks, Liberty Steel engaged counsel, who have the responsibility to manage the discovery process. Even experienced counsel struggle with ESI.  Yet Liberty Steel lays that responsibility at the feet of a former chief executive.  Even by the standard Liberty Steel sets in the hundreds of pages of briefing in response to the Report and

105

Recommendation in which it stakes out some pretty aggressive or frivolous positions, this objection goes too far.  The Court **OVERRULES** it.

*     *     *

Finally, to extent the Court has not expressly noted the disposition of any objection Liberty Steel has asserted, it **OVERRULES** any such objection.

### II.E.  Sanctions

Discovery misconduct of the sort at issue here demands serious sanctions to punish Liberty Steel, compensate Plaintiffs for the costs they have incurred as a result, and assure future compliance with the discovery rules.  *See Bell*, 80 F.R.D. at 229.  An additional principle guided the Court identifying appropriate sanctions: avoiding sanctions that give Plaintiffs a windfall or are unfairly punitive, particularly in light of the remedies for contempt ordered in *McCracken*.

Based on the gravity of Liberty Steel's misconduct over many years, the Special Master proceedings necessary to get to the bottom of its discovery failures, and even then the fortuity that brought improperly withheld documents and information to light, case-terminating sanctions are an available and appropriate sanction.  In fact, the record makes clear that imposing such a sanction would make sense.  It shows an inability on the part of Liberty Steel to manage fairly basic aspects of discovery, ultimately requiring substantial resources from the Court and the parties to manage—all of which leaves the Court with no confidence that Liberty Steel has the ability to comply with its basic discovery obligation, even if it wanted to.  And the Court is not sure it does.  Additionally, Liberty Steel and Mr. Blasingim urge the Court *not* to reopen discovery in the *Blasingim* case, even on the limited basis the

106

Special Master recommends.  (*Blasingim* ECF No. 199, PageID #10009.)  In light of the last-minute production of thousands of documents before the Special Master issued her Report and Recommendation, that position pushes in the direction of a sanction to end the case.

But after a great deal of consideration, which accounts for some of the time the Court took to rule on the pending motions, the Court declines to impose a case-terminating sanction.  It does not decline to do so lightly.  And the Court stops short of case-terminating sanctions for one reason, and one reason only.  The Special Master recommended against such a severe sanction.  After working closely with the parties, she formed the judgment that the record did not warrant extraordinary sanctions.  (*Blasingim* ECF No. 166, PageID #4965.)  Also, she formed the view, with which the Court agrees, that it is not clear that the documents and information at the heart of the Special Master proceedings amount to trade secrets, even though they constitute Monarch's protected property and information under the Court's Order and the parties' settlement agreement in *McCracken*.

### II.E.1. Sanctions Imposed

Rule 37(c) contains a self-executing sanction, precluding Liberty Steel from using any of the information it failed to disclose.  The Court will enforce that provision of the Rule, but doubts it will have much consequence in the circumstance of this case.  Accordingly, the Court **ORDERS** the following additional sanctions:

### 1.

On the Special Master's recommendation, the Court re-opens discovery in *Blasingim* for the following limited purposes:

(1) Plaintiffs may follow up on the information that the Special Master proceedings brought to light, including the May 2022 document production Mr. Blasingim made.  In the Court's view, the discovery of these matters should not take more than a few weeks.  But the Court will defer setting a schedule until after the parties have the opportunity to review this Order and confer about the discovery necessary and a schedule for it.

(2) Plaintiffs may file a motion for discovery sanctions against Mr. Blasingim and Mr. Campbell.  Based on the record developed in the Special Master proceedings, the Court would think that little, if any, further factual investigation is necessary and that briefing can be short, both in terms of time and pages.  Again, the Court will defer setting a schedule until after the parties have the opportunity to review this Order and confer.

(3) To the extent they have not already done so, Plaintiffs may seek information in discovery from Liberty Steel related to its damages theories in *Blasingim*, including the outstanding issue of compensation in *McCracken*.

These limited proceedings will allow Plaintiffs to test the information produced in the Special Master proceedings.  Basic fairness and the fundamental rules of civil discovery require this much.  In the Court's view, the position of not reopening for which Defendants advocate would require case-terminating sanctions.

**2.**

Plaintiffs request the opportunity to obtain and introduce a revised expert report, should they determine that doing so is necessary.  (*Blasingim* ECF No. 196, PageID #9933.)  Because the deadlines for expert discovery in *Blasingim* had not

passed when Plaintiffs initiated these proceedings by moving for contempt, the schedule the Court will set will include a period for expert discovery.

At oral argument, Plaintiffs represented that they had already produced an expert report addressing damages. Under the circumstances, the Court will allow Plaintiffs to supplement or amend that report without consequence, meaning that the witness is not subject to cross-examination on the first report if Plaintiffs choose to amend or supplement it.

### 3.

The Court will instruct the jury that the record establishes that Liberty Steel possessed Monarch's protected property and information at the times relevant to this lawsuit. Further, as part of its instructions at the end of the case, the Court will inform the jury of the inability of Liberty Steel to comply with their discovery obligations, using the Grasso cell phone and Mr. Blasingim's belated production of documents as examples, and instruct the jury that it may give these facts whatever weight they choose in their deliberations.

### 4.

Under Rule 26(g)(3), an appropriate "sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Similarly, Rule 37(c)(1)(A) provides that a court "may order payment of the reasonable expenses including attorney's fees, caused by the [discovery] failure." In light of the remedies for contempt that the Court orders, the cost-shifting of these Rules has limited applicability in *Blasingim*. But not none.

For the additional limited discovery the Special Master recommends, the Court **ORDERS** Liberty Steel to bear the expenses, including Plaintiffs' reasonable attorneys' fees, necessary to execute this Order, including third-party vendor fees and other costs.

Plaintiffs ask for payment of all their attorneys' fees for all future proceedings and expert fees they claim Liberty Steel's discovery failures and misconduct necessitated. (*McCracken* ECF No. 196, PageID #9933–34.) The Court declines to go that far. Upon the conclusion of the limited discovery outlined, the parties will be in the position they would have been in under the schedule the Court previously set. For the sake of clarity, any fees for Plaintiffs' expert(s) to supplement or amend pursuant to this Order, and counsel's related fees, remain the responsibility of Plaintiffs. At that point, each party will bear its own expenses and fees as they would under the traditional American Rule, subject only to any ongoing costs resulting from the Special Master proceedings and this Order, which remain the responsibility of Liberty Steel unless the Court orders otherwise.

### II.E.2. Objections

Many of Liberty Steel's objections to the imposition of financial sanctions depend on findings of facts that it contends are erroneous. (*See Blasingim* ECF No. 197, PageID #9971 & 9972.) Based on its findings, the Court **OVERRULES** these objections. Additionally, the Court's remedy for Liberty Steel's contempt moots Liberty Steel's objections to financial sanctions to a large degree. To the extent the sanctions imposed have financial consequences for Liberty Steel in *Blasingim*, the

110

Court **OVERRULES** those objections, finding that these sanctions are necessary to remedy the discovery misconduct and proportionate to prejudice to Plaintiffs.

### II.E.2.a. Objections to Costs

Liberty Steel objects to reallocation of the costs associated with KLD's work in the Special Master proceedings that the parties initially shared. (*Blasingim* ECF No. 197, PageID #9971.)  Because the Court addressed these costs as part of the remedy for contempt, this objection is **MOOT**.  Further, the Court notes that KLD performed work that Liberty Steel should have undertaken in discovery, making it appropriate for Liberty Steel to bear these costs alone.  To the extent that the sanctions for Liberty Steel's discovery failures require the shifting of any other costs, the Court makes the same ruling and **OVERRULES** any objection.

### II.E.2.b. Objections to Fees

Liberty Steel relies on Rule 37(a)(5)(A) to argue that the Court "must not order" an award of attorneys' fees because Plaintiffs did not meet and confer in good faith before resorting to the Court to remedy Liberty Steel's discovery failures. (*Blasingim* ECF No. 197, PageID #9969.)  This argument fails.  First, the Court already addressed at length the record and history of Plaintiffs' attempts to obtain discovery, including with the Court's direct involvement and supervision.  Second, Rule 37(a)(5) applies to a motion to compel, which as the Court discussed is not a prerequisite to sanctions under Rule 37(c).

Similarly, Rule 26(g)(3) provides that an appropriate sanction for discovery failures and "may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation."  The sanctions the Court imposes properly

include attorneys' fees under Rule 26(g)(3) too, and appropriately limit those fees to expenses Plaintiffs incurred because of Liberty Steel's discovery failures.

Liberty Steel makes two other objections to an award of fees as a sanction. First, because the Special Master did not review Plaintiffs' itemized fees, Liberty Steel argues that fees are not appropriate because she did not award them. (*Blasingim* ECF No. 197, PageID #9973; *Blasingim* ECF No. 199, PageID #100005.) Again, proceedings to address any remedy, including a fee award, often await a ruling on liability.  Doing so conserves the parties' resources and promotes judicial economy, particularly where, as here, one party contests liability—in this case the factual and legal basis for sanctions—and the Court put the Special Master proceedings on a tight timeline.  Accordingly, the Court reads the Report and Recommendation as suggesting a fee award, with appropriate proceedings to follow.  To the extent Liberty Steel is correct, then the Court disagrees with the Special Master in this regard and, conducting its own review of the record, finds an award of fees to be part of an appropriate sanction.

Second, Liberty Steel argues that Plaintiffs did not prevail in any aspect of these Special Master proceedings in a way that would entitle them to fees. (*Blasingim* ECF No. 197, PageID #9974.)  Just because Plaintiffs did not obtain a default judgment in *Blasingim* as they sought does not mean the law does not treat them as prevailing parties.  Further, Rule 26(g)(3) and Rule 37(c)(1) provide for fees if appropriate without respect to the prevailing-party principles on which Liberty Steel draws for this argument.  Similarly, the Rules do not make clean hands a

112

prerequisite for an award of fees, as Liberty Steel argues.  (*Blasinim* ECF No. 197, PageID #9974.)  And the case on which Liberty Steel relies for that proposition involves a remand to State court.  *See Vallone v. Microsystems Techs. LLC*, No. 3:04-cv-188, 2006 WL 8442310, at *1 (S.D. Ohio Mar. 22, 2006).  In any event, Liberty Steel is hardly in any position to make that argument.  As already explained, Plaintiffs made efforts to obtain discovery.  Perhaps because those efforts were aggressive, they were met with obfuscation and delay.  On this record, for the reasons already explained, the Court finds that the fault lies with Liberty Steel.

For these reasons, the Court **OVERRULES** these objections.

### II.E.2.c. Objection to Litigating *McCracken* in This Case

Liberty Steel objects to the Special Master's recommendation to the extent it results in litigating in *Blasingim* claims it settled in *McCracken*.  (*Blasingim* ECF No. 197, PageID #9970; *Blasingim* ECF No. 199, PageID #10009.)  The Court's Order for determining any damages to Plaintiffs from Liberty Steel's alleged use of Monarch's protected property and information in the proceedings remaining in *Blasingim* does not involve any substantive claim.  Instead, it is solely remedial.  Further, using a jury in an advisory capacity in *Blasingim* to determine the damages, if any, for contempt will ultimately conserve the parties' resources by avoiding the multiplication of proceedings that will inevitably, to one degree or another, overlap.  Also, it responds to the concern that Liberty Steel raises about the ongoing litigation of Plaintiffs' trade-secret claims in *Blasingim*.  With appropriate judicial involvement, this approach can address any practical or legal issues before trial to allow this process to work effectively.

### III.    Section 1927

Federal law allows a court to award attorneys' fees and other costs where a lawyer "so multiplies the proceedings in any case unreasonably and vexatiously."  28 U.S.C. § 1927.  In her Report and Recommendation, the Special Master notes that sanctions under 28 U.S.C. § 1927 are "appropriate where there has been some conduct on the part of the subject attorney that trial judges could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party."  (*Blasingim* ECF No. 166, PageID #4965 (quotation omitted).)  However, she did not recommend sanctions under Section 1927 or identify any particular lawyers or firms which engaged in conduct that would make an award under this statute appropriate.

In this respect, and contrary to Plaintiffs' position at oral argument, the Court agrees with the Special Master.  Although different lawyers or law firms might have made individual decisions that contributed to Liberty Steel's contempt or discovery failures, the record does not permit a finding that anyone of its lawyers or firms engaged in conduct that would permit an award of fees or costs against them under Section 1927.  Further, the record shows that Liberty Steel bears responsibility for its contempt and misconduct in discovery resulting in the sanctions imposed.  This finding moots various objections Liberty Steel asserts.

### CONCLUSION

Setting aside the messy details, the record shows that Liberty Steel settled *McCracken* by agreeing to take (or refrain from taking) certain other actions and to purge information and data from its systems.  To carry out that settlement, based on

114

its cost-benefit analysis, including weighing the risks attending noncompliance, Liberty Steel necessarily made judgments of how far to go and what steps to take to remove the information the Court ordered it to remediate.  Fundamentally, Liberty Steel decided to do less than what the Court's Order in *McCracken* obligated it to do. It might have succeeded in that strategy but for the confluence of events, and a little luck.  At bottom Liberty Steel's decision to limit its efforts to comply with the Court's Order in *McCracken* and the settlement obligations into which it voluntarily entered set in motion the events culminating in the Special Master's Report and Recommendation and now the Court's Order.  At any number points along that path, Liberty Steel had numerous offramps it might have pursued that would have avoided this day.  Nevertheless, it persisted with its strategy.  To be sure, its counsel made certain oversights and the like that contributed to the circumstances that resulted in this ruling.  But Liberty Steel alone bears responsibility for and the consequences of its decisions.

The Court commends the Special Master for her skilled and careful handling of these contentious and difficult proceedings and trusts that she will bring the same judicious approach to management of the proceedings outlined in this Order.  This ruling disposes of all pending matters before the Court in these two cases.  After a brief period to allow the parties to analyze this ruling and confer on next steps, the Court will set a status conference to move the proceedings forward.

**SO ORDERED.**

Dated:  December 15, 2022

_____

J. Philip Calabrese
United States District Judge
Northern District of Ohio